State ex rel. Bank vs. Board of Assessors et als.

## No. 11,861.

THE STATE OF LOUISIANA EX REL. CITIZENS BANK OF LOUISIANA
VS. BOARD OF ASSESSORS ET ALS.

When the Citizens Bank subjects property to its ownership, which was mortgaged
to secure stock subscriptions, the property is not exempt from taxation as
part of the capital stock of the bank.

A PPEAL from the Civil District Court for the Parish of Orleans.
Rightor, J.

Henry Denis and Branch K. Miller, for Plaintiff, Appellee.
Walter H. Rogers, as amicus curiæ, submitted a brief.

Richard Lyons, for Defendants, Appellants.

Argued and submitted November 8, 1895.
Opinion handed down December 2, 1895.
Rehearing refused January 6, 1896.

The opinion of the court was delivered by

McENERY, J.   The Citizens Bank, in pursuance of a provision in
its charter, demands that certain assessments against its property be
canceled.

The defendant Board of Assessors contend that the same issue is
now pending before the Circuit Court of the United States between
the same parties and pleads lis pendens.   The board urges also as a
defence that the Act No. 40 of 1874, granting an extension to the
bank of its charter, is unconstitutional, being in violation of the
Constitution of 1868, and that the bank by voluntarily adopting the
provisions of Act 79 of 1880 brought the charter under the provi-
sions of the Constitution of 1879, in which case there could be no
exemption of the capital of the bank.   It will be unnecessary to no-
tice these defences, nor will it be necessary to discuss the plea of
res judicata pleaded by the bank.   The cases to which it refers in
support of the plea involved the furniture in the banking house, the
banking house property and the shares of stock of the corporation.
The property upon which it was attempted to assess taxes in those

suits is different from that in the instant case, and the issues are es-
sentially different. The property which it is attempting to relieve
from taxation is certain real estate specially mortgaged to the bank
to secure the payment of 854 shares of the capital stock of the bank.
The bank foreclosed the mortgage and purchased the property in
order to make the debt.

The charter of the bank has been so often discussed and the
manner of the formation of its capital by subscription to stock and
its security by special mortgage so universally understood that we
are relieved from the labor of a review of the charter, and again
stating the rights of the bank under its special mortgage to secure
stock subscriptions.

It is only necessary to say that under the supplemental and
amendatory Act of 1836, Sec. 4, only the capital of the bank is ex-
empt from taxation. Citizens Bank vs. Bouny, Tax Collector, 32
An. 239.

The question for solution is: The stock for which the special
mortgage was given to secure, being exempt, does the purchase
of the property by the bank substitute the mortgaged property for
stock, thus making it a part of the capital of the bank, exempting
it from taxation?

The statement of the proposition we think carries with it a nega-
tive answer. The shares of stock and the property mortgaged to se-
cure it are distinct and different things. The property while in pos-
session of the mortgagor was subject to taxation, while the shares of
stock issued by the bank were exempt. The charter of the bank by
its very terms and recitals never contemplated that immovable
property should form any part of the banking capital.

It never contemplated that the bank should become the owner of
the property in default of paying the mortgage—otherwise there
would have been a different contract with the stock subscriber.

The bank, like any other mortgage creditor, could only become
the owner of the property in the contingency of no one bidding more
for it than the creditor. In relation to this mortgaged property it
stands in no more favorable relation than if it went into the market
as a speculator and purchased property. If it should do so and
become the owner of property, we do not think it would have the
assurance, under its present charter, to ask relief from taxation.

The debt of the bank, secured by special mortgage, gives it only a

right to have the property judicially sold to pay the debt. It is unfortunate if the security is inadequate, and no purchaser can be found to bid the amount of the debt. The bank is thus forced to purchase the property in certain instances, but we fail to see wherein the mortgaged property, by the purchase, becomes a part of the capital of the bank. The composition of the capital of the bank is stated in its charter, and there is no reference whatever to immovable property being a part of the capital stock. Such being the case the purchase of property mortgaged to secure a part of its capital certainly can not give this specified property a new character.

In its broadest meaning capital signifies actual estate, whether in money or property owned by an individual or corporation. 23 N. Y. 192.

It is the fund upon which a corporation transacts business which is liable to its creditors, and in case of insolvency, passes to a receiver. 28 Barbour, 320.

The Citizens Bank does not transact its business on an investment in the purchase of immovable property. Its capital is fixed by its charter.

The capital of the bank is composed of loans. These loans are granted and secured by mortgages, which mortgages shall form the basis of and stand as full security for the loans and the interest thereon, which the directors are authorized to make as forming the capital of said bank. Sections 1 and 3 original charter, Act of 1833.

In the charter the word capital means capital stock, the amount of capital designated by the charter, and not the value of the property of the corporation. 30 Ark. 693.

Stock in corporations is personal property. The capital of the bank is composed exclusively of personal property. The mortgage is only an accessory obligation to enforce the payment of the principal one, and we can not perceive in what manner, when subjected to the ownership of the bank in the enforcement of the payment of its debt, it takes the place of and stands in lieu of the debt, free from the privileges accorded by law to the debt. If the mortgaged property sells for enough to pay the debt, it is, of course, extinguished. If for less, then there is still an obligation resting on the debtor to pay the balance not realized.

If the mortgaged property is to stand in the stead of the principal obligation it must do so in its entirety. What is to become of

the unpaid balance as to taxation?   We would in such a case be confronted with the anomaly of the mortgaged property being exempt from the whole amount of the subscription and the unpaid subscriptions also exempt.

This case might have been disposed of by the assertion that the property, upon which the special mortgage was given to secure the payment of the stock subscription, was not and is not exempt from taxation.   Can the mere act of purchasing the property by the bank give it a status, which it did not have before?

The proposition that the mortgaged property, when subjected to the ownership of the bank, does not take the place, as capital of the bank, of the capital stock it was intended to secure, is so plain to us that we have had difficulty in framing an argument to sustain such a self-evident truth.   This is the view evidently taken by defendants, as they have failed to file a brief, and we have looked in vain into relator's brief for any substantial reasons against the position assumed by us, unless, as we infer, the contention is that the exemption in the original charter is still in force, and that *all* the property of the bank is exempt from taxation.   But even in this contingency, we would be inclined to the opinion that the property referred to was only that used in immediate connection with the banking business of the corporation, such as its banking building, furniture, etc., which formed the subject matter of the dispute in the cases pleaded as *res judicata* by relators.

The judgment appealed from is annulled, avoided and reversed, and it is now ordered that the relief prayed for be denied, and the demand of plaintiff be rejected, and the rule granted discharged.

MILLER, J., recused.

## ON APPLICATION FOR A REHEARING.

We have carefully considered the reason urged for a rehearing in this case.   On a re-examination of the questions presented we are more than confirmed in the correctness of the views expressed in the opinion.

We refrained from stating the effects as to the taxation of the bank's capital, in consequence of Act 79 of 1880.   We now do the same because we think it unnecessary to do so.   We propose to let this question, as to the exemption of the bank's capital, rest on the decisions heretofore rendered.

A written acceptance of the act was filed by the bank with the Secretary of State.

Section 4 of the act reads that "this act shall not be binding, or confer any right upon the bank unless accepted within twelve months from the date of this act, and under the conditions prescribed in Arts. 234 and 237 of the Constitution. Such acceptance to be manifested by the bank in writing, and filed in the office of the Secretary of State."

That the act was for the benefit of the corporation is made certain by the acceptance of the benefit of the act and the text of the same. Art. 234 forbids the amending or the altering of the charter of an existing corporation for the benefit of such corporation, except upon the condition that such corporation shall thereafter hold its charter, subject to the provisions of the Constitution of 1879.

Article 237, which the bank accepted as governing its charter, provides that " no corporation shall engage in any business other than that expressly authorized in its charter, or incidental thereto, nor shall it take or hold any real estate for a longer period than ten years, except such as may be necessary and proper for its legitimate business or purpose."

The acceptance of the benefits of the act bring this corporation under the provisions of the above article.

It is restricted to the business of banking. It can not for a longer period than ten years hold real estate not essential to the conducting of its banking operations. To hold that the property purchased is a part of the banking capital would, in effect, be to repudiate this article of the Constitution and to nullify the bank's acceptance of the same.

If it be a part of the banking capital it can not be diminished in ten years; otherwise the corporation would probably go out of existence by the exhaustion of its capital. The cultivation or the leasing of the property purchased—the only way of administering it without loss, is not a part of the business operations of the bank, nor is it incidental thereto. We think the Citizens Bank has heretofore obtained all that it is entitled to, the exemption from taxation of its capital proper and the real estate necessary for the carrying on its legitimate business or purposes.