(31 Misc. Rep. 433.)

### PEOPLE ex rel. NATIONAL SURETY CO. v. FEITNER et al., Commissioners of Taxes.

(Supreme Court, Special Term, New York County. May, 1900.)

CORPORATIONS—CAPITAL STOCK—TAXATION—RESERVE FUND.

> Laws 1896, c. 908, requires the capital stock of every company, together with its surplus profits or reserve funds exceeding 10 per cent. of its capital, to be assessed for taxation at its actual value. *Held*, that a fund consisting of unearned premiums held by a fidelity insurance company as a reinsurance reserve fund, as required by Insurance Law, § 22, was a part of the capital, and therefore taxable.

Certiorari by the people, on the relation of ·the National Surety Company, against Thomas L. Feitner and others, as commissioners of taxes and assessments in the city of New York, to review the action of such commissioners in assessing relator's property for taxation. Writ dismissed.

Hornblower, Byrne, Miller & Potter, for relator.

John Whalen, Corp. Counsel (James M. Ward and David Rumsey, of counsel), for respondents.

LEVENTRITT, J. Certiorari to review the action of the commissioners of taxes and assessments. The relator is a domestic corporation incorporated under the provisions of the insurance law (Laws 1892, c. 690), and engaged in the business of guarantying the fidelity of persons holding ·places of public or private trust, as well as of the performance of contracts other.than insurance policies, and of executing bonds and undertakings required or permitted in legal proceedings. The relator was assessed as of the second Monday of January, 1899. The commissioners accepted the relator's valuation of its total gross assets at the sum of $1,359,817.24, but refused to allow all the deductions claimed. These aggregated $1,363,655.04, and, if allowed, would have resulted in an excess of deductions in the sum of $3,837.80, thus leaving no property to be taxed. The only item disallowed was $213,777.83, set out in the relator's statement as being "unearned premiums held as reinsurance reserve as required by law; being amount necessary to reinsure outstanding risks." This was declared to be taxable, and the assessment accordingly fixed at the sum of $208,600. The taxability of that item· presents the sole question for determination. I can find no sanction either in principle, statute, or decided case, for interfering with the action of the commissioners. The assessment was made pursuant to section 12 of the general tax law (Laws 1896, c. 908), which reads:

> "The capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment roll or shall be exempt by law, together with its surplus profits or reserve funds exceeding ten per centum of its capital, after deducting the assessed value of its real estate, and all

shares of stock in other corporations actually owned by such company which are taxable upon their capital stock under the laws of this state, shall be assessed at its actual value."

What was the actual value of the capital stock and surplus on assessment day? Capital stock is synonymous with capital, and is part of the property vesting in the corporation in its corporate capacity. People v. Coleman, 126 N. Y. 433, 27 N. E. 818, 12 L. R. A. 762. Although section 12 makes no specific reference to debts as a deductible item in the assessment, it is obvious that the actual value of the corporate assets mentioned is impaired to the extent of existing indebtedness; and so, under the earlier general tax law (Laws 1857, c. 456), section 3, substantially the same as the one here under consideration, was construed to contemplate such deduction. People v. Barker, 139 N. Y. 55, 34 N. E. 722. The rule has been recently restated in this form:

"In determining the capital of a corporation for the purpose of general taxation, the actual value of the corporate assets, less the debts and obligations of the corporation, is the true rule of assessment." People v. Roberts, 154 N. Y. 101, 105, 47 N. E. 980.

The relator contends that the so-called reserve fund measures contingent liabilities which impair actual value, and that deduction must be made therefor, even as in the case of existing debts. It is necessary to examine the nature of the "reinsurance reserve." I shall accept as unchallenged the relator's claim that it will require the sum sought to be deducted to effect the reinsurance of outstanding risks as of the second Monday in January, 1899. It appears from the record that this sum is not a specific fund set apart from the other assets of the relator, but is mingled with its general property. The testimony of its vice president, upon the examination held after application to the respondents for correction of the assessment, shows that the so-called reserve is in fact only a book entry, invested in the same manner as the other moneys of the relator. The very designation of the term is arbitrary, not made pursuant to any direction of the insurance or tax laws, but apparently derived from certain general provisions of the former which prescribe a test of solvency, so that the superintendent of insurance shall determine whether or not the financial condition of a particular company warrants its continuance in business. Insurance Law, §§ 21, 86, 178, 297. The legislative policy, as embodied in the insurance law, is to safeguard policy holders to the utmost, and to require a company, in any emergency, to have sufficient property left to reinsure all outstanding risks. Thus, an insurance corporation whose assets and credits are insufficient to effect such reinsurance shall be deemed insolvent (section 28); and, in estimating the condition of the company, the premium reserve on policies in force, equal to the unearned portions of the gross premiums charged for covering the risk, shall be charged as liability (section 86). These and similar provisions under the insurance law do not convert the premiums, collected before and only partly earned on assessment day, into liabilities under the tax law, or into liabilities in fact. Under the tax law the test is the impairment of actual value. Although under the insurance law a certain portion of the property of the cor-

poration is arbitrarily transferred into the liability column for the purpose of testing whether, under all contingencies, completest protection exists for the policy or bond holders, there is no sanction for adopting the designation "liability" in, or for extending the application of the insurance statute to, the tax law. The considerations that induce the enactment of provisions for the security of policy holders of insurance companies are quite different from those underlying the enactment of tax legislation. Under that, this reinsurance reserve is not exempt or deductible by virtue of express provision. If it can be shown that it does not impair the actual value of capital stock and surplus, clearly then it is not entitled to immunity from taxation. The reserve itself, to use the descriptive word of the insurance law, is not in any sense a liability. It is not even subject to the contingency attending the unearned premiums of a fire insurance company, held, as it were, subject to the call of policy holders, to be returned to them upon a surrender of their policies after deduction of short rates. Once paid, it becomes the property of the relator. The insured never becomes entitled to the repayment of the premium. In the event of nonperformance the remedy is in damages for breach of the contract. In other words, all the premiums paid into the relator's treasury are irreclaimably its assets. Nor does the reserve measure a contingent liability deductible under the statute. It is to be conceded that, if the relator were to go out of business, it would require that amount to protect its policy and bond holders by the reinsurance of the risks. But the contingency is remote, and inconsistent with the object of the corporation which was organized to maintain a going business, not for the purpose of going out of business. The reasonable probability is continuance, not discontinuance. True, all insurance companies may, and do on occasion, reinsure a portion of their risks in other companies. Whenever that takes place, then their own corporate assets are diminished by the amount devoted to that reinsurance, and the actual value of their taxable assets correspondingly reduced. But until that occurs the premiums remain in the absolute ownership and control of the original company, unimpaired in value or amount.

It is difficult to conceive how the actual value of capital stock and surplus was affected on assessment day by the existence of this so-called reserve fund. Debts then existing obviously reduce actual value, dollar for dollar. For every dollar of debt there will be a dollar less of capital and surplus. The property of the corporation is worth just so much less when the commissioners make their estimate. But what is there to be charged against the reserve? It is not a trust fund held by an insurance company for the benefit of its policy holders. People v. Davenport, 91 N. Y. 574, 582; Insurance Co. v. Parker, 35 N. J. Law, 575. It is not a fund presently answerable to any claim or demand. It is not in any part intended to be applied to the payment of losses against which the relator had insured. It is property of the relator, mingled with its other assets,—at most, a book entry, under the insurance law, for the purpose of an arbitrary, statutory test of solvency, but, under the tax law, actual, valuable property, against which there is no claim or demand, and which on assessment day has in no wise been diminished, impaired, or affected. It is in fact

an index of the prosperity of the company; for, the greater the insurance reserve, other things being equal, the greater will be the surplus, the more satisfactory the condition of the company. It points, not to a decrease of the actual value of capital and surplus, but to an increase. It would work injustice to exempt this asset from taxation on the theory of the possible application of these moneys at some remote time to the purposes of reinsurance. It is a contingency not contemplated by the parties to the contract, and inconsistent with the very life of the company. No deduction is permissible until the partial application of the reinsurance moneys to such purpose, and then only to the extent of such application. If every remote and vague possibility that might ultimately impair the actual value of the capital and surplus of a concern were deductible on the theory of its being a contingent liability, no property of any corporation would be left for taxation. On the mere contingency that there may arise a debt or liability, all property would escape bearing its just proportion of the public burdens. In a recent case in the court of appeals in which the taxable value of capital stock was considered under the act of 1857, substantially similar to our present act supra, it was said, "The value of property is determined by what it can be bought and sold for." People v. Barker, 146 N. Y. 304, 312, 40 N. E. 998. Obviously, an intending purchaser, while he would insist on a deduction of existing debts, the discharge of which would consume a portion of the assets to be transferred, would have to pay in full for the amount of the so-called reserve fund.

It might have sufficed for the discussion of this case to have rested on the rule announced by the court of appeals, and already referred to, that the assessment is to be determined by deducting debts and obligations from corporate assets, and simply to have pointed out that the item sought to be deducted is neither debt nor obligation. That it is not a debt has been specifically decided. People ex rel. Glens Falls Ins. Co. v. Ferguson, 38 N. Y. 89; People v. Davenport, supra. That it is not an obligation in the sense contemplated by the decisions defining the rule supra must appear sufficiently from the analysis of the nature of the reserve. The obligation thereby intended is not an obligation in the popular sense, but an obligation in law. Strong v. Wheaton, 38 Barb. 625; 17 Am. & Eng. Enc. Law, 2, and cases cited.

Before distinguishing the cases invoked by the relator it may be well to point out that independent of the particular provision of the statute, and merely on the general theory of taxation as indicated in section 3 of the act, this item should not escape taxation. That provides that all real property within this state and all personal property situated or owned within this state, are taxable, unless exempt from taxation by law. Taxation is the rule. Exemption is the exception, and must be clearly established. No person or property is impliedly exempt, and the statute is to be strictly construed against the claimant. People v. Peck, 157 N. Y. 51, 51 N. E. 412. The personal property here under discussion is not exempt under section 4, and is therefore justly taxable in somebody's possession. Manifestly, it is not taxable to the insured, from whose hands the property has irredeem-

ably passed. Its ownership, unimpaired on assessment day, is in the relator, to whom it is properly taxable. The allowance of a deduction for debts does not violate the rule that all property should be taxed; for the debt is represented by a corresponding asset in the creditor, who is properly taxable thereon. If there were no deduction allowed for debt, an unjust and indefensible double taxation would ensue. But in this case to grant the immunity would result in no taxation.

The relator cites several cases to show that contingent liabilities, similar to those which it claims to be measured by the "reserve" here discussed should be taken into consideration in the determination of actual value. People ex rel. Glens Falls Ins. Co. v. Ferguson, 38 N. Y. 89; People v. Board of Tax Com'rs of City and County of New York, 76 N. Y. 64; People v. Coleman, 107 N. Y. 541, 14 N. E. 431. Of these, only the Glens Falls Case need be considered, as that alone presents the precise point contended for by the relator; the other cases following, in obiter, the rule and language of the earlier one. The relator in that case was a fire insurance company. The assessors, after allowing certain deductions and exemptions, refused any allowance on account of the company's outstanding policies. It appeared that these exceeded $22,000,000, on which premiums had been received, and that it would cost $80,000 to reinsure such outstanding risks. The general term sustained the assessors, holding that this contingent liability was not deductible, but the court of appeals reversed their decision on the ground that actual value was impaired by the existence of this contingent liability. If the measurement of actual value were now the same as at the time that the Glens Falls Case was decided, we should be compelled to bow to the authority of that decision. But, although the act of 1857 and that of 1896 are practically the same so far as the taxation of corporations is concerned, the test of actual value is now quite different, and that adopted in the Glens Falls Case and Starch Co. v. Dolloway, 21 N. Y. 458, on which it was founded, has been distinctly repudiated. People v. Coleman, supra. In those cases the actual value of the capital stock was ascertained by ascertaining the actual value of the share stock. Share stock and capital stock, under the statute, were treated as equivalents. Obviously a great many things affect and determine share value, such as business prospects, management and enterprise, outstanding risks, fixed debts, and contingent liabilities. The last, in the natural order of things, always bears upon share value. But the actual value of capital stock cannot be measured by share value, and the contingencies and possibilities which enter into it find no place in the former. The value of share stock is calculated, that of capital stock counted. In People v. Coleman, supra, the court says:

"Now, it is certain that the two things are neither identical nor equivalents. The capital stock of a company is one thing. That of the shareholders is another and a different thing. That of the company is simply its capital, existing in money or property, or both, while that of the shareholders is representative, not merely of that existing and tangible capital, but also of surplus, of dividend-earning power, of franchise and the good will of an established and prosperous business. * * * So that the property of every company may consist of three separate and distinct things, which are its capital stock, its

surplus, its franchise; but these three things, several in the ownership of the company, are united in the ownership of the shareholders. There are reasons in abundance for the conclusion that by the phrase 'capital stock' the statute means, not the share stock, but the capital owned by the corporation,—the fund required to be paid in and kept intact as the basis of the business enterprise, and the chief factor in its safety. One ample reason is derived from the fact that the tax is assessed against the corporation, and upon its property, and not against the shareholders, and so upon their property."

This case has been followed and approved in the most recent decisions. People v. Barker, 141 N. Y. 196, 36 N. E. 184; People v. Same, 152 N. Y. 417, 46 N. E. 875; People v. Dederick, 161 N. Y. 195, 55 N. E. 927; People v. Morgan, 47 App. Div. 126, 62 N. Y. Supp. 191. Obviously, if share stock is no longer the basis of the calculation, elements that peculiarly entered into that valuation cannot be considered in estimating the actual value of property constituting capital and surplus. The Glens Falls Case, then, is not in point, because a different rule of valuation is now applied,—one in which contingent liabilities, as indicated in the main part of the opinion, play no part. I am of the opinion that the determination of the tax commissioners should be sustained.

Writ dismissed.