No. 13,434.

GEORGE B. PENROSE, TREASURER OF THE CITY OF NEW ORLEANS, VS. D.
A. CHAFFRAIX.

SYLLABUS.

1. Where there is no clause in its charter exempting from taxation, it may be
*the power* resides in the Legislature to levy a tax on both the capital of a
corporation and the shares of stock representing that capital.

2. But where there is an exempting clause, the question becomes one of *legisla-
tive intent* as to the scope and extent of the exemption, rather than one of
legislative power.

3. When the Legislature in 1836 exempted the capital of the Citizens' Bank of
Louisiana from taxation, it meant to include in the exemption that which
represented the capital—the shares in the hands of those who had subscribed
to the capital stock.

4. The effect of the decision of the Supreme Court of the United States in New
Orleans vs. Citizens' Bank, 167 U. S. 371, is to maintain and carry the
exemption into the extended period of the bank's charter.

APPEAL from the Civil District Court, Parish of Orleans—*King, J.*

*Charles H. LaVillebeuvre,* Assistant City Attorney, *Samuel L.
Gilmore,* City Attorney, for Plaintiff, Appellant.

*Francis C. Zacharie,* for State Tax Collector.

*Henry Denis, Branch K. Miller,* and *Charles J. Theard,* for Defend-
ant, Appellee.

The opinion of the court was delivered by

BLANCHARD, J.    This is a proceeding taken by the City of New
Orleans, through its Treasurer, to recover of defendant the payment
of a tax for the year 1899 imposed upon a certain number of shares
of the capital stock of the Citizens' Bank of Louisiana held by him.

The answer of the defendant raises the issue of the exemption *vel non*
from taxation of the shares of the capital stock of the bank in the hands
of its share holders.

The judgment of the court *a qua* maintained the exemption, and
plaintiff appeals.

The demand for this taxation is predicated upon the following clause

of Section 27 of Act No. 170 of the Acts of Louisiana of 1898, known as the Revenue Act, to-wit:

"In the event that any National bank, State bank, banking firm or banking company, is by decision of the courts held not liable to pay the taxes on the shares of its shareholders, then the taxes shall be collected from and paid by each shareholder on the share or shares by him held, and each shareholder failing to pay the same may be proceeded against by a rule to produce, and by all the other proceedings provided for in this act for the collection of taxes on movable property."

The record of this case and the records of this court disclose that various attempts were made in the past, notably in the years 1878, 1882, 1884, 1886 and 1887, by the tax-assessing and collecting officials of the State of Louisiana and City of New Orleans to enforce against the Citizens' Bank a tax on the shares of stock it had issued to its shareholders.

This was done under the authority of former revenue acts, applying to the years for which the assessments were made, by the terms of which, while the shares of stock of banks were assessed against the owners thereof, the tax thereon was to be collected from the banks themselves, with the right to the latter to reimburse as against the shareholders.

In each case where the attempt was thus made to tax the shares of the capital stock of the Citizens' Bank, the latter resisted, litigation followed and the courts decreed the cancellation of the assessments made on the stock, holding the same exempt from taxation, as against the Bank, under the terms of its original charter and the Acts of the Legislature amendatory thereof.

The present suit is the first attempt to hold the shareholders, themselves, directly amenable to taxation assessed against the shares of stock owned by them.

In all the years the Bank has been in existence—from 1833 to the present time—its shares of capital stock have not been taxed. Either the statutes imposing taxation have omitted the levy of taxes on bank shares, or, when levied, the tax officials have, when they came to the Citizens' Bank, considered the shares of its capital stock as exempt from taxation under the Bank's charter, or when they did not consider them exempt and attempted to hold the same amenable to taxation, the courts have set aside the assessmeent as violative of the contract obligations between the Bank and the State growing out of the Bank's charter and the legislative enactments relating thereto.

The attempt to hold the Bank stock subject to taxation, when proceeded against in the aggregate as above stated, by seeking to enforce payment of taxes thereon against the Bank itself, having failed, the same end is sought to be reached in the Revenue Act of 1898 by authorizing proceedings against the stock in detail in the hands of its holders.

The court having decided that because of the exemptive clause of its charter the Bank cannot be held liable to pay the taxes on the shares of its stock holders, the attempt is now made to tax the shares in the hands of the holders thereof and to force the latter to pay the same.

If the Bank is to be called on to pay the tax, it is no longer an open question that the shares of its capital stock may not be taxed.

Whether they may be taxed in the hands of the shareholders is the issue here tendered.

The difference between this and the previously adjudged cases is that in the latter the Bank was treated as the immediate tax debtor, while in the instant case the shareholder is so treated.

In both the property assessed is the same, being shares of stock of the Citizens' Bank.

There is a line of decisions in certain other juridictions, including the Supreme Court of the United States, which hold that the exemption of the capital of a corporation from taxation does not of necessity include the exemption of the shareholders on their shares of stock.

The doctrine may be sound, though it cannot be said of it that it is of universal acceptance.   In many courts it has been challenged.   It has not heretofore been necessary in this jurisdiction to pass directly upon the same.   Nor is it considered necessary now.

Where there is no clause exempting from taxation it may be *the power* resides in the legislature to levy a tax on both the capital of a corporation and the shares of stock representing that capital.

But where there is an exempting clause, the question becomes one of *legislative intent* as to the scope and extent of the exemption, rather than one of legislative power.

Whether the exemption of the capital or the capital stock from taxation includes immunity of the shareholders from the imposition of such burden on the shares of capital stock held by them individually, is to be determined on a consideration of the nature or character of the exemptive clause and the relations established between the taxing power (the State) and the corporation (the Bank) at the time the charter was granted, and maintained since.

What, then, was the nature of the exempting clause in this instance; what the intention of the Legislature in enacting same?

The true answer to this question is to be gathered from the context of the whole act, to be deduced from its letter and spirit, taking into consideration the time when enacted and the objects to be attained forming the consideration of the exemption.

What was the evident purpose of the sovereign power in thus dealing with its creature, what the relations established in order to effectuate this purpose?

The Citizens' Bank of Louisiana was incorporated by Act approved April 1, 1833. The 30th Section of that Act, in consideration of certain benefits therein stipulated to the State, declared the corporation exempt from taxation. The language used was:—"* * * the said corporation shall, during its existence, be exempt in its capital and property, * * * from all taxes to the State, or to any parish or corporation created by law of this State."

Subsequently, the Act approved January 30, 1836, was enacted. It greatly enlarged the scope of the Bank's purpose and the extent of its power.

It pledged the faith of the State as security for a sum as large as twelve millions of dollars, and bonds of the State, predicated upon this pledged faith, to the extent of seven millions of dollars were issued, and by means thereof the capital needed for the enlarged purpose of the bank was secured.

It was provided that these bonds, both in capital and interest, should be paid by the Bank at the time of their maturity, and to protect the State from loss certain guarantees were stipulated for, and securities granted.

The State was, likewise, given an interest in the profits to be realized and it was provided that the whole amount thereof should be appropriated to the benefit of the free schools.

Twelve directors were to manage the affairs of the Bank, six to be chosen by the State and six by the stock holders. It was stipulated that the Legislature might appoint committees to inquire into the affairs of the bank.

The rate of discount was even fixed by the Act.

One of the considerations of the amended charter was that the sum of five hundred thousand dollars each was to be paid to three colleges named in the Act, and these colleges, in consideration thereof, were to

receive so many pupils each free of charge for either tuition or board—the sum so paid to the colleges to be charged against the amount accruing to the State as its share of the profits.

Books of subscription to complete the capital stock were directed to be opened and subscriptions by citizens invited and made.

And there was an exemption of the Bank from taxation, superseding the previous exemption, in these words:— "And the capital of said bank shall be exempt from any tax laid by the State, or by any parish or body politic under the authority of the State during the continuance of its charter."

For a more detailed statement of the relations of the Bank with the State, see Bank vs. Bouny, 32 La. Ann. 239, and New Orleans vs. Citizens' Bank, 167 U. S. 271.

The Acts of 1833 and 1836, and later statutes relative to the Bank, render it clear that the State intended to make of the Bank and did make of it an instrumentality of its own for the effectuation of certain public policies, mainly the encouragement, promotion, and development of its agricultural interests.

To this end it created the Bank, supplied the bulk of its capital and established relations with it of a contractual character.

Because of this it granted the clause quoted above exempting from taxation.

At that time the refined distinction between the capital and the capital stock of a corporation had not been made by the courts, or was at least unrecognized as yet in Louisiana.

When the Legislature exempted the capital of the Bank from taxation it meant to include in the exemption that which represented the capital, which was the tangible evidence of the capital—the shares in the hands of those who had subscribed to the fund which went to make up the capital.

That was the usual meaning, the ordinary significance of the terms employed.    It was so taken and understood at the time and long subsequent thereto, as is shown by the fact that down to the present time neither the capital of the Bank nor the shares of its capital stock have ever been amenable to taxation.

Considering the nature of the State's relation to the Bank and the Bank's relation to the State, it is impossible to acquiesce in any other conclusion.

What, invite private subscriptions to a fund designed to form in

part the capital of a bank which is to become an instrument of the State, formally exempt this capital from taxation and yet latently reserve the right, secretly entertain the intention, of some day taxing the certificates which show that A. B., C. D., and others had supplied money which constituted that capital!

To so hold would be to impugn the justice, fairness and good faith of the Legislature which enacted, and the Executive who approved the Act.

It is a question of intention and we cannot hold that the lawmakers of that early period meant to ensnare the then subscribers to the capital stock by exempting the capital itself, yet reserving the right to succeeding generations to tax the shares representing that capital in the hands of the heirs and assigns of those who subscribed.

All the circumstances indicate that the Legislature, at the time this exemption was deliberated upon and adopted, did not intend to make a difference, for the purpose of taxation, between the capital of the bank, or its capital stock in the hands of the corporation itself, and the shares of the same capital stock in the hands of the individual stockholders.

The subscribers dealt with the Bank upon the public faith of the State as declared in its statutes.

The word "capital" as used in the exempting clause of the Act of 1836 embraced capital stock within its meaning. This court has heretofore distinctly so held. In the case of the Citizens' Bank vs. Board of Assessors, 48 La. Ann. 37, this language was used:—

" In the charter the word *capital* means capital stock, the amount of capital designated by the charter, and not the value of the property of the corporation." See also New Orleans vs. Canal Bank, 32 La. Ann. 160.

The exemption was granted for a consideration and it formed a contract between the State and the corporation. Citizens' Bank vs. Bouny, 32 La. Ann. 239. The contract with the Bank was a contract with the stockholders of the Bank. Gordon vs. Appeal Tax Court, 3 How. 133.

Where a contract appears the intention *of both contracting parties* is to be sought. Davis vs. Gray, 16 Wall. 232.

It can hardly be doubted that if the original subscribers to the capital stock had been informed the offer of the State to exempt the capital was not intended to exempt the shares in their hands, the consequence

would have been that they would not, in many instances, have sub-
scribed to the stock. There would have been no sufficient inducement
for them to do so, on that score. Whether the tax came out of their
pockets directly, or whether it came out of the Bank, to be deducted
from their dividends, or to affect the value of their shares, there was
not to them the shadow of a difference.

When the State contracts it places itself on an equality with the other
contracting party, and thus becomes liable to the application of the
rule *contra proferentem*.

In the State Ex Rel. Bank vs. Board of Assessors, 48 La. Ann. 35,
by the language used on page 36 this court virtually affirmed the non-
liabilty of taxation of the shares of stock issued by defendant bank.

It is true the question did not there arise directly, but the statement
was evidently deemed necessary in the elucidation of the theory on
which that case was decided against the Bank.

The only remaining question is whether the Bank or its share-
holders can claim the exemption accorded by the Act of 1836 for the
extended period of its charter, and especially so in view of the passage
of Act No. 79 of the Acts of 1880 and of the acceptance by the Bank
of the terms and conditions of the Act.

The contention of the plaintiff is that when, in 1874, the Legislature
granted the extension it could only do so subject to the limitations and
prohibitions found in the then Constitution of the State—that of 1868
—and that these precluded the exemption claimed.

Furthermore, it is contended that by the acceptance of the Act of
1880, whatever rights of exemption the Bank had under its charter of
1836 were surrendered, and that thereafter the Bank could claim no
immunity from taxation not recognized by the Constitution of the State
of 1879.

Both these contentions were passed upon, and negatived in New
Orleans vs. Citizens' Bank, 167 U. S. 371, and the effect of that decision
of the Supreme Court of the United States is to maintain and carry
the exemption into the extended period of the Bank's charter.

Judgment affirmed.

Breaux, J., concurs in the decree, assigning reasons therefor in sep-
arate opinion.

The Chief Justice and Mr. Justice Monroe dissent.