WHEELING FIRE INSURANCE COMPANY *v.* BOARD OF EQUALIZATION & REVIEW

(No. 7029)

Submitted September 30, 1931. Decided October 13, 1931.

162

*Price, Smith & Spilman* and *J. M. Woods,* for plaintiff in error.

*A. C. Schiffler, Donald McKee* and *John T. Simms,* for defendant in error.

LIVELY, JUDGE:

This case presents the question: Do the taxation laws of this state permit a domestic fire insurance company, in making its return for assessment of taxes, to deduct from its money, credits or investments the unearned premiums in its hands?

The Wheeling Fire Insurance Company is a resident domestic corporation engaged in a general fire insurance business. For the year 1930, the assessor of Ohio County assessed its tangible personal property at $4,000; its money, credits and investments at $408,399 and deducted therefrom two items ($17,300 reserve for miscellaneous items, and $49,561 for unpaid losses) aggregating $66,861, but did not deduct therefrom its unearned premiums which were in the company's hands as of the 31st of December, 1929, amounting to $433,721. The refusal to deduct these unearned premiums from the aggregate of money, credits and investments, is the sole error assigned. The company went before the board of review and equalization, where it filed the affidavit of its assistant secretary to the effect that the unearned premiums amounting to $433,721 were ascertained on the basis determined by the state insurance commissioner, and approved by him; that the unearned premium reserve has heretofore been deducted and allowed in all its former assessments; that said sum represents the aggregate amount it would be required to pay its policy holders on demand from them as of December 31, 1930; that if it sold its assets to another insurance company it would be

paid for its assets less the unearned premium reserve; and that if it reinsured its risks it would have to pay said sum to the company which would assume the fire risks. It was also stipulated that the amount of taxes involved, if the deduction be not allowed, is $8,000 for the year 1930. The board refused to disturb the assessor's findings, and an appeal was had to the circuit court, which likewise refused to lessen the assessment, and dismissed the appeal; to which order the appeal here was granted.

The statute claimed to be pertinent is section 12, article 3, chapter 11, Code 1931, which requires a resident domestic insurance company (among many other incorporated companies named) to make a written verified report to the assessor, the amount of money on hand, the amount of credits and investments, other than in its own capital stock, with their true and actual value, and the kind, quantity and true and actual value of all its tangible property located in each magisteril district; and to report other properties not important here. Also chapter 11-5-6, Code 1931, which provides that in listing money, credits, or investments the person owning the same may have deducted there from the amount of the indebtedness which he owes to others as principal debtor, but not what he may be liable for as surety or endorser, unless the principal debtor is insolvent and the surety or endorser is not indemnified. The constitution, article 10, section 1, requires that taxation shall be equal and uniform, and all property shall be taxed in proportion to its value, to be ascertained as directed by law, except property used for educational, literary, scientific, religious or charitable purposes; and cemeteries and public property may be by law exempt from taxation. The case turns on whether unearned premiums are *indebtedness* of the company within the meaning of said section which permits the taxpayer to deduct *indebtedness* from his money, credits, or investments. If these unearned premiums be *indebtedness* contemplated by the statute, then the assessor, board of review and equalization, and the circuit court were in error; if they be not indebtedness, the taxpayer can have no relief.

164

To maintain the issue on its part the company asserts that the purpose of the assessment section above set out was that a taxpayer should be taxed only on the true and actual value of his intangible personal property, and indebtedness should only be taxed once and to the person to whom the indebtedness is owing, in the present case, to the policy holders. If the policy holders be assessed with the value of these unearned premiums and the company be assessed with them also, double taxation would result. Such is the argument, and it is confidently asserted: (1) The policy holders should be taxed on these unearned premiums instead of the company. (2) The company also directs attention to section 35, chapter 34, Code 1923 (now 33-4-4, Code 1931), which requires fire insurance companies on or before March 1st to report annually to the state insurance commissioner its assets and liabilities, and which directs that the amount of premiums received on all risks, not terminated, shall be reported under the head of "liabilities"; from which it is argued that the law recognizes the unearned premiums as liabilities, and they should theremore be treated as debts under the assessment laws; and the statutes considered in *pari materia,* and as a part of a general system of laws. (3) The company also invokes the doctrine of practical construction given by the administrative officers, based on the affidavit of the assistant secretary, which says that heretofore the company has always been permitted without question to deduct the unearned premiums from its intangible personal property. (4) Attention is also directed to the federal income tax law which allows the reserve funds of an insurance company to be deducted from its gross income, in ascertaining the amount of income on which the tax is computed, as held in *Maryland Casualty Company* v. *United States,* 251 U. S. 342. And lastly, (5) the company contends that other states which impose a property tax on insurance companies and permit indebtedness to be deducted from their intangible personal property, permit the reinsurance reserve to be deducted as indebtedness. Decisions from states holding to the contrary are criticised as not based on sound reasoning.

On the other hand, the prosecuting attorney of Ohio County and the state tax commissioner argue (a) that all property in the state is subject to taxation to carry its share of the burdens of government, except such property as is authorized by the constitution to be exempted by law, and that the statute authorizing deductions of indebtedness from money, credits or investments is, in effect, a tax exemption and should be strictly construed; (b) that unearned premiums are not ''indebtedness'' within the meaning of section 67, chapter 29, Code 1923 (now 11-5-6, Code 1931); that in the states having similar statutes which allow deductions of indebtedness from intangible personality, the weight of well considered decisions is that unearned premiums are not ''indebtedness'', and are not deductible; (c) that the policy holders have no taxable values in the insurance contracts with the company; and lastly, (d) that if the statute be construed to allow the deductions of unearned premiums as ''indebtedness'', then such construction would render the statute unconstitutional as contrary to section 1, article 10, constitution, which provides that all property shall be taxed in proportion to its value, to be ascertained as directed by law, and shall be equal and uniform throughout the state. It is claimed that such construction would permit these unearned premiums ($433,721) to escape taxation in violation of Article 10, section 1, above noted.

Counsel have opposite views of the decisions in other states affecting the question here involved, and while these decisions are only persuasive, it may be well to examine them. The answer to the problem at issue is controlled by our own taxation laws. The insurance company relies upon *Alabama Gold Life Insurance Company* v. *Lott*, 54 Ala. 499, decided in 1875, and which holds that under its statute, subjecting to taxation ''all moneys loaned and solvent credits'', and providing that the indebtedness of the taxpayer shall be deducted from such credits, and the excess only taxed, a life insurance company is entitled to deduct the amount of its premium reserve from its solvent credits. This case was cited and followed by the Iowa court in *Equitable Life Insurance Company* v. *Board of*

*Equalization*, 37 N. W. 141, (1888) and which, in effect, reversed a contrary holding in *Equitable Life Insurance Company* v. *Board*, 32 N. W. 376. Fire insurance cases cited by the board in that case were not considered because they were fire insurance cases and not applicable. The Iowa statute provided that in making up money or credits for taxation, the taxpayer was entitled to deduct from the gross amount all *debts* in good faith owing by him. The case of *Michigan Mutual Life Insurance Company* v. *Common Council of Detroit*, 95 N. W. 1113 (Mich. 1903), also follows the Lott case and cites with approval *Equitable Life Insurance Company* v. *Board, supra,* and practically overruled *Detroit Fire, etc.* v. *Hartz*, 88 N. W. 405, in which the court said that the premiums paid to the company became its property, contingent upon being returned to the policy holder upon cancellation, a remote contingency, which could not be dignified by the name of ''bona fide indebtedness due or to become due'', used in the statute to describe such exemptions.

On the other hand, in *People* v. *Feitner*, 65 N. Y. Supp. 523 (1900), the court held that unearned premiums were the property of the insurance company and therefore subject to taxation, recognizing that indebtedness of a corporation should be deducted from the corporate assets in making and ascertaining the amount on which taxes were leviable, but holding that unearned premium reserve was not ''indebtedness'' within the taxation laws. In that case, the insurance laws required the unearned premiums to be listed as liabilities which the court said were for actuarial purposes to determine the ability of the company to pay all its liabilities, fixed and contingent. In *People* v. *Davenport*, 91 N. Y. 574, unearned premiums were not allowed to be deducted as indebtedness, although the court said that there was nothing in the case to show that the assessors had not deducted from the conceded assets, all the insurance company was entitled to deduct on account of its contingent liabilities. The personal property amounted to $774,600 of which $500,000 was invested in non-taxable U. S. bonds, there was an item of $35,000 for unpaid losses, which left $239,600 from which the insurance company asserted a

right to deduct $340,000 unearned premiums. The assessment was upon a valuation of $76,000. So, it was impossible to determine, under the incomplete evidence, that the assessors did not make deductions for contingent liabilities. In *Kenton Insurance Company* v. *Covington,* (Ky.) 55 S. W. 461 (1887), it was held that unearned premiums were not indebtedness which should be deducted from the property of an insurance company listed for taxation. The statute provided that after the assessment of specific property described, each person was required to fix the amount of his worth from all other sources, after deducting his indebtedness, and indebtedness was defined as "just and honest debts owing as principal and not as surety, and created for a valuable consideration, which the person intends to pay." The court discussed the liability of the company to repay upon cancellation of the policies, and the risk of payment in case of loss by fire, holding that such contingent liabilities were not debts which could be deducted. The same conclusion was reached in *Kansas Mutual Life Insurance Company* v. *Hill,* (Kan. 1893), 33 Pac. 300, namely, that the contingent liabilities of a mutual life insurance company were not debts which could be deducted from its taxable assets. In accord: *Republic Life Insurance Company* v. *Pollock,* (1874) 75 Ill. 292; and *Home Fire Insurance Company* v. *Lynch,* (Utah) 56 Pac. 681. In the Utah case, the statute allowed a person to deduct from his total amount of credits "the amount of all bona fide debts owing by him". The case of *Insurance Company* v. *Cappellar,* 38 Ohio St. Repts. 560, held that the insurance company's reinsurance reserve was not a legal bona fide debt, within the meaning of its tax laws, which could be deducted from its claims and demands. In accord is *Trenton* v. *Standard Fire Insurance Co.,* (1909) 77 N. J. L. 757, in which Chancellor Vroom dissented without giving reasons for his dissent. These cases discussed which hold, in effect, that unearned premiums are not debts within the meaning of tax laws allowing indebtedness to be deducted from intangible personal property of an insurance company are criticized by appellant as being based upon unsound reasoning; and reliance is placed upon the

Alabama, Iowa and Michigan cases as better considered and based on sound legal principles. The weight of decisions seems to be against appellant. The text, in Vol. 2, Cooley on Taxation, (4th Ed.), p. 1887, sec. 940, which reads: "Unearned premiums cannot be deducted as a debt", is based on the above cases. No discussion of the reason for the statement is given by the author. But as before stated, these decisions, pro and con, are merely persuasive. Our statutes on taxation must be interpreted, if they need interpretation, according to the intent of the legislature.

The argument that the insurance laws (chapter 33, article 4, Code 1931), which require an insurance company to report to the state insurance commissioner its unearned premiums under the head of liabilities should be considered in *pari materia* with the tax laws, is not well taken. The provision in the insurance law is for actuarial purposes to ascertain the solvency of the company. It is the duty of the insurance commissioner to see that every insurance company is able to meet its liabilities, actual and contingent, and he is given adequate powers for that purpose. The business of insurance is quasi public in character and is regulted under the police power by inspection, visitation and control. The above report required was to facilitate governmental control, and has little bearing on the interpretation of tax laws. The two subjects of legislation are separate and distinct. *People ex rel.* v. *Board,* 76 N. Y. 64. The rule of practical construction is not clearly applicable. The only basis for its application is the company's statement in its application to the circuit court for appeal from the board of equalization and review, that "ever since its incorporation its unearned premium reserve has been deducted for each year from its money, credits and investments as proper items of indebtedness"; and the affidavit of the assistant secretary, filed before the board, which reads in part: "Affiant further says its unearned premium reserve has always heretofore been recognized as a liability which it was authorized to deduct from its money, credits and investments in all its former assessments for taxation in said state." The record does not show when the company was

organized, nor how many years it has made returns for taxation. A contemporaneous construction placed upon an act practiced by and acquiesced in for a period of years by those having its administration is entitled to great weight in construing a doubtful statute, and will not be overthrown by the courts except for strong reasons, or unless clearly erroneous. *State* v. *Board*, 84 W. Va. 417. While the assessor of Ohio County may have permitted the deduction in all former assessments, there is nothing to show that the tax commissioner, who for many years has been at the head of the tax department, ever had his attention drawn to this practice or ever made ruling thereon. It is a rule of construction that if a statute is doubtful a court will always consider the construction put upon the act when it first became operative, and that construction, after lapse of time without legislative or judicial change, will generally be regarded as the correct construction, unless manifestly wrong. *Daniel* v. *Simms*, 49 W. Va. 554. The rule of practical and continuous construction is not forceful in this case, for the reasons above set out, in the interpretation of the meaning of the word "indebtedness" which the statute allows to be deducted from moneys, credits or investments of a taxpayer. Nor do we think the federal income statute which permits unearned premiums of an insurance company to be deducted from its gross income for any one year, of much significance. The purpose of that statute is to ascertain the net amount of income on which the tax is to be levied. The policy of the federal government, as well as the policy of other states, which have enacted statutes expressly permitting insurance companies to deduct from their intangible personal property unearned premiums, is only persuasive of what the legislature of this state should do; and has little weight in determining our own policy as set out in our present taxation laws.

The controlling question is whether unearned premiums of an insurance company are "indebtedness" within the meaning of our statute, above quoted. In approaching this question, it must be bourne in mind that the constitution requires that all property shall be taxed to bear the burdens of govern-

ment except designated properties which may, by law, be exempted. It must be clear therefore that the unearned premiums in the hands of the company, used and invested by it, constitutes "indebtedness," otherwise it would escape taxation. If it be indebtedness, then some creditors of the company owns that indebtedness and the property would be taxed to that creditor as money, credits or investment. In this manner only would the sum of money here involved be taxed. Who is that creditor? It is argued that the policy holder is the creditor, for he has a right to cancellation of his contract and a return of the unearned premiums. When he does so and receives back the money, he would be taxed on the money due him, or in his hands. We do not think it would be practical to assess his right of cancellation under the policy contract. The statute should be strictly construed to prevent property from being withdrawn from taxation. When the taxpayer claims indebtedness for reduction, the statute requires him to list the indebtedness, to show when payable and the amount thereof, including interest to the first day of the assessment year. No attempt was made to do so, or at least, it does not so appear from the record. The statute clearly contemplates an existing indebtedness, which is due or will become due at some stated period. "The popular or received import of words furnishes the general rule for the interpretation of public laws as well as of private and social transactions." *Daniel* v. *Simms*, 49 W. Va. 554 (pt. 7 Sy.). The liability of the company to repay to policy holders, if perchance they call for cancellation, the losses which may occur by fires, if, perchance, fires occur, and costs for reinsurance, if, perchance, reinsurance be issued, depends upon contingencies which may or may not happen. When these contingencies happen, the liability is changed to a fixed indebtedness to some particular person. Possible indebtedness is not allowed to be deducted, as illustrated by the statute, which says that a surety liability cannot be deducted unless that liability has resulted in a fixed obligation to pay by reason of the insolvency of the principal. It is insisted here that the policy holder should pay the taxes on the unearned premiums.

This contention was made in several of the cases cited above and there denied. See *People* v. *Feitner, supra; Ins. Co.* v. *Cappellar, supra; Ins. Co.* v. *Parker;* and *Tripp* v. *Fire Ins. Co.*, 12 R. I. 435. The policy holders of appellant company are not confined to this state, and to hold that they have a taxable interest in their policy contracts would be impracticable for taxation purposes. We are of opinion that the unearned premiums in the hands of appellant used and controlled by do not constitute "indebtedness" within the meaning of Code 1931, 11-5-6; and affirm the judgment of the circuit court.

*Affirmed.*