## Insurance Company Investments

RENO, Attorney General, September 19, 1939.—In a letter dated March 29, 1939, you seek advice on the matter of the investment of funds of fire and casualty insurance companies.

There is seemingly no unanimity in the interpretation of the sections of The Insurance Company Law of May 17, 1921, P. L. 682, which deal with the manner in which funds of such companies are to be invested.

The background of the situation is that the legislature has provided safeguards to protect policyholders by restricting investments of the various classes of insurance companies.

Sections 404 and 405 treat of the investment of funds of life insurance companies. Section 404 states the manner in which both the "capital" and "reserves" are to be invested. Section 405 states the manner in which "surplus" may be invested. In general, investments of capital and reserves, under section 404, are restricted, while investments of surplus, under section 405, are less restricted.

This legislation recognizes that a life insurance company is required to have reserves to meet its liabilities. By section 405, recognition is also given to the fact that such companies will have or may have funds additional to that actually required for their purposes.

The legislation also indicates that, while it may prescribe the manner in which a life insurance company may invest *all* of its funds, the legislature does not have the same interest or concern with the investments of funds which are not required for the protection of policyholders.

In the case of both fire insurance companies and casualty insurance companies, the corresponding sections do not tie up "reserves" with "capital".

Thus, section 517, which deals with the class of insurance companies known as fire insurance companies, prescribes only for the investment of "capital", while section 518 deals only with the investment of "surplus".

Likewise, section 602, which concerns casualty insurance companies, treats only of the investment of "capital" of such companies, while section 603 deals only with the investment of their "surplus".

The same general plan is carried out with respect to fire and casualty insurance companies, as is the case with life insurance companies, in that the "capital" of each must be invested on a more restricted basis than "surplus".

Two positions have been taken by insurance companies as a result of this situation.

The first position is that "capital", in sections 517 and 602, means all the funds not strictly "surplus". This

would place both fire and casualty insurance companies on the same practical basis as life insurance companies.

The other position taken by some companies is that in sections 517 and 602 "capital" means only the "capital stock" of the company, that is, the fund with which the company started business.

The question thus raised is this: Which of the above two positions is correct?

As pointed out by A. C. Boyson, Acting Director, Bureau of Examinations, in his letter to you dated March 29, 1929, if we apply the maxim "Expressio unius est exclusio alterius", we might find legislative intention to exclude "reserves" from the category of "capital" because sections 517 and 602 do not couple "reserves" with "capital". The "reserves" of such companies would not, therefore, be subject to the more restrictive investments to which capital is limited.

The proposition above outlined is apparently the chief argument of those who contend that, as so used, the term "capital" means only "capital stock". There are circumstances which operate to defeat such contention.

As pointed out by the letter of March 29, 1939, the items which fire and casualty insurance companies are required to maintain in the nature of reserves are, strictly speaking, not reserves. That is, provision must be made for "unearned premiums" and "unpaid losses", and for similar items by all fire and casualty insurance companies, but these are not the same as reserves of a life insurance company. Such items in the case of fire and casualty insurance companies are "definitive liabilities, not created to provide for contingencies or eventualities, but set up to reflect an obligation known to have been incurred, definitely established or closely approximated, . . . ."

Resort to this Latin maxim is, therefore, not particularly apropos, and we also feel that too much importance should not be given to the maxim for the reason that the principle of law reflected by it certainly cannot be all-

controlling in this situation. In other words, we must examine the entire situation, with particular reference to the object to be attained by the legislation, consequences of the various possible interpretations, and the circumstances which lead to this type of legislation, in order to determine what the term "capital" embraces and what it does not embrace. The word "capital" in the investment sections is not used explicitly and this is the real cause of the problem which confronts us.

In thus examining this situation we note that in section 517(i) of The Insurance Company Law, supra, as amended by the Act of July 12, 1935, P. L. 963, the word "reserves" is used. This section provides:

"The Insurance Commissioner may permit any such company [fire, marine, or fire and marine insurance company] to invest sufficient of its reserves in the securities of a foreign government in order to enable it to comply with the laws of such foreign government and transact business therein."

The word "reserves" does not appear in section 602. But if the use of the word "reserves" in section 517 is indicative of anything, it reflects recognition by the legislature that a fire insurance company has funds which are to be treated as "reserves", and which are subject to restricted investment only, except that with permission of the Insurance Commissioner they may be invested in a class of securities not otherwise authorized, namely, foreign government securities.

A controlling fact is that mutual fire and mutual casualty insurance companies are required, by section 802 of the act, to invest in the same manner as stock companies. Yet, mutual companies do not have capital stock as they do not issue shares. If those holding that the word "capital" as used in sections 517 and 602 means only "capital stock" are correct, no funds of a mutual fire or mutual casualty insurance company would come within the restrictive investment provision of the law.

As provided in section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, when the words of a law are not explicit, the intention of the legislature may be ascertained by considering "the consequences of a particular interpretation." It is quite apparent that the legislature never intended this consequence in the case of mutual fire and casualty companies.

As indicated by the terms, funds styled "unearned premiums" and "unpaid losses" are moneys which must or may be payable to other parties by insurance companies. Safeguarding such funds is as justifiable as is the case with "reserves" of life insurance companies. The legislative authority would naturally be invoked as strongly in one case as the other.

Referring again to the Statutory Construction Act, we find that when the words of a law are not explicit the intention of the legislature may be ascertained by considering "the object to be attained": Section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019. The object of investment sections is to safeguard insurance company funds which for any reason must be protected. Funds which must or may be payable to other parties should be so considered.

Additionally, we wish to point out that the best-considered decisions add strength to the contention that, as used in the sections above cited, the word "capital" is not limited to "capital stock".

In the case of Person & Riegel Co. v. Lipps, 219 Pa. 99, in interpreting a New Jersey statute, the court, at page 109, says:

"It is evident, from a comparison of the original act with its amendment, that the legislature regarded the difference between the capital and capital stock of a corporation; and there is a well-understood distinction, universally recognized, between 'the capital or property' of incorporated companies and 'their capital stock.' 'The term "capital" applied to corporations is often used interchangeably with "capital stock," and both are fre-

quently used to express the same thing,—the property and assets of the corporation—but this is improper. The capital stock of a corporation is the amount subscribed and paid in by the shareholders, or secured to be paid in, and upon which it is to conduct its operations; and the amount of the capital stock remains the same, notwithstanding the gains or losses of the corporation. *The term "capital," however, properly means not the capital stock in this sense, but the actual property or estate of the corporation, whether in money or property.'* " (Italics supplied.)

See also Christensen v. Eno, 106 N. Y. 97, 12 N. E. 648, Commonwealth v. Schwarzschild, 259 Pa. 130, State ex rel. v. Board of Assessors et al., 48 La. Ann. 35, 18 So. 753, and People ex rel. v. Feitner et al., etc., 31 Misc. 433 (New York).

Likewise, light is thrown upon this situation by decisions which define the word "surplus".

Particularly apropos is certain language appearing in the case of The State, The People's Fire Ins. Co. v. Parker, etc., 35 N. J. L. 575, at page 577, where the court says:

"This word [surplus] is defined as 'overplus;' that which remains when use is satisfied; excess beyond what is prescribed, or wanted, in law; the residue of an estate after the debts and legacies are paid."

See also Fry v. Provident Savings Life Assurance Society of N. Y. (Tenn. 1896), 38 S. W. 116.

Applying the above-quoted language, it would seem that the word "surplus", as used in sections 518 and 603, refers to the amount of money which an insurance company may have, in addition, (1) to that which it was required to have in order to begin business, *plus* (2) what it must have to continue in business.

We are, therefore, of the opinion and you are accordingly advised that:

1. The term "capital" as used in sections 517 and 602 of The Insurance Company Law is not limited in mean-

ing to the "capital stock" of a fire insurance or a casualty insurance company. This term includes all the assets which a company must have in order to do the business it is authorized to do. Such assets must be invested strictly in accordance with the terms of sections 517 and 602.

2. The term "surplus" as used in sections 518 and 603 of The Insurance Company Law may be defined as those assets of a fire insurance company or a casualty insurance company which are "overplus", that is, assets not required by such company in order to do the business which it is authorized to transact. Such surplus may be invested according to the provisions set forth in sections 518 and 603.