# CHARLESTON.

BLUE, TAX COMMISSIONER v. TETRICK, CLERK.

Submitted October 31, 1911.     Decided November 14, 1911.

1.  CREATION OF OFFICES—*Constitutional Provisions.*
      Chapter 4, Acts 1904, extra session, found in code, edition 1906, ch. 29, is not unconstitutional in its provision creating the office

of Tax Commissioner. He is a lawful state executive officer. (p. 744).

2. SAME.

The Legislature has power under the constitution to create subordinate executive state offices in addition to those specified in section 1 of article VII of the constitution. (p. 744).

3. SAME—*Duties of Officers—Statutory Provisions.*

Chapter 33, Acts of 1908, extra session, is not unconstitutional in its provisions requiring public officers in keeping accounts of public moneys, to conform to the system and forms prescribed by the state tax commissioner and board of public works. (p. 751).

Original proceeding by Fred O. Blue, State Tax Commissioner, for *mandamus* to W. Guy Tetrick, Clerk of the County Court of Harrison County.

*Motion to quash and demurrer to alternative writ overruled.*

*L. S. Echols, E. R. Kingsley,* and *Fred O. Blue,* for petitioner.

*Philip P. Steptoe,* for respondent.

BRANNON, JUDGE:

Fred O. Blue, State Tax Commissioner and as such Chief Inspector of public offices, filed in this Court a petition alleging that W. Guy Tetrick, clerk of the county court of Harrison county, had failed to keep his accounts conformably to the system of accounting by public officers prescribed by chapter 33 of the acts of the extra session of the Legislature in 1908, Supplement Code of 1909, chapter 10 B, and praying for a *mandamus* to compel said clerk to so keep his accounts. The defendant moved the court to quash the alternative writ and demurrer to it, and we hear the case on that motion and demurrer, not on any facts not in that writ stated.

One defence against the issuance of the *mandamus* is that the act found in code of 1906, ch. 29, creating the office of Tax Commissioner is unconstitutional, and that in law there is no such office as Tax Commissionership and that the plaintiff is no officer at all and has no power as such. This position rests on the theory that the act establishes another executive officer in addition to those specified in the Constitution; indeed, that

the act creates another executive department. The provision of the Constitution relied upon for this contention is section 1, article VII, reading as follows: "The executive department shall consist of a governor, secretary of state, state superintendent of free schools, auditor, treasurer and attorney general." The claim is that the tax commissioner is a state officer, of the same nature and character as the governor and other officers named in the clause of the Constitution just quoted, and that that clause contains all the executive officers to fill and execute the duties of the state executive department, and no more can be added. We cannot concur in this contention. In the first place, we must remember the well known rule that as the legislature is the supreme law making power, it can enact any law where it is not prohibited by state or federal constitution. 3 Encyclo. Digest, 161. Our Constitution has no prohibition in this matter. We cannot think that it was the intention of the framers of the Constitution to limit the power of the legislature so as to prohibit it from creating new offices to aid in state executive administration. It was not the intention to say that the legislature, the law making power, should be restrained from doing this, however necessary, as population and business have increased in future. We must not give such a construction to the Constitution as would so far militate against the public wellfare and necessity. The Constitution of the United States provides that "The executive power shall be vested in a president of the United States of America." It cannot be possible that it was intended that all the multifarious executive duties should rest on the president alone, without power in Congress to create offices and officers of great power, to carry on executive administrations. Congress has never taken that view, as it has created, during the whole history of the government, numerous officers to carry on high functions of government, cabinet officers and others of high dignity and great powers. If that proposition be true we have been a long time finding it out. To so hold would turn back the tide of time. And we may say the same as to state. We can not think that the statutes establishing a state board of health, commissioner of banking, chief inspector of mines, state board of control, state archivist, board of pharmacy, and state game and fish warden, besides others, are unconstitutional and void. All along the road during the life of this state and the

life of Virginia the legislature has provided additional offices
and officers to perform executive functions. In Colorado was
the same provision as that in our Constitution. The court said
that "in declaring what officers should constitute the executive
department it was not intended that the legislature should not
create new executive offices. Such presumption would be vio-
lence to the intelligence of the framers of the instrument. It
is, we think, the purpose of the section to provide for such offices
of the executive department as the members of the constitutional
convention deem absolutely indispensable, leaving it to the
legislature to create new offices as the growth of the state and
experience might suggest, and to abolish the same, but without
authority to abolish any of those enumerated. The Constitu-
tion of the United States provides that the executive power of
the nation shall be vested in the president, but it will certainly
not be contended that it was intended by this that the president
was to be the sole and exclusive executive officer of the nation."
*State* v. *Womack*, 4 Wash 19, also so holds. The text of 36
Cyc., page 854, reads thus: "The enumeration by the Constitu-
tion of certain officers as constituting the executive department
of the state does not necessarily deprive the legislature of the
power of creating other executive offices, although it can not
abolish any of those created by the constitution." The same rule
is found in 23 Am. and Eng. Ency. of Law 328. Such I would
say would be the true construction of the above quoted extract
from article 7, section 1, of the Constitution, if the case rested
upon that alone. But there are other clauses in the Constitu-
tion which clearly contemplate power in the legislature to create
additional offices, and authorize it to do so. Take section 8,
article 7. It says the governor shall nominate, and by and with
the advice and consent of the senate appoint, all officers whose
offices are established by the Constitution, *"or shall be created
by law*, and whose appointment or election is not otherwise pro-
vided for." Section 8, article 4, says: "the legislature, in cases
not provided for in this Constitution, shall prescribe by general
laws the terms of offices, powers, duties and compensation of
all public officers and agents, and the manner in which they shall
be elected, appointed and removed." These sections clearly
recognize the power of the legislature to create additional
offices in the executive department. I do not say that the legis-

lature could create an office with power in its incumbent to oust the governor of his constitutional functions, though I think it could deprive him of powers given by statute, and transfer them to another officer; but I do say that it is very clear that the legislature may create an additional office and provide for filling it as an auxiliary or aid in the executive department. It can not be said that chapter 33, Acts of 1908, extra session, makes the tax commissioner coequal with the governor, since it provides that the governor shall appoint him and may remove him, and the tax commissioner shall report to the governor. The tax commissioner is thus not the coequal of the governor, but is a subordinate in the executive department.

It is virtually contended that the power to create additional officers applies only to subordinates, to employees, or inferior officers, but not to an officer like that of the tax commissioner, vested, as he is, with great and important supervision over the conduct of officers as to monetary matters; but the language of the Constitution above quoted is "officers whose offices are established by this Constitution, or shall be created by law." The word "create." means to bring into existence that which did not exist. It gives to the legislature power to originate an office. And it uses the word "office." Its legal signification is different from employee. An employee is a mere agent. In *Harligan* v. *Board of Regents,* 49 W. Va. 14, we discuss this difference, and under principles there stated it is clear that a tax commissioner holds an office, and the Constitution authorizes the legislature to create an office. The Constitution goes further than merely to authorize the legislature to create an employment; it authorizes it to create an office. The tax commissioner is an officer paid out of the public treasury, and exercises some great powers pertaining to sovereignity and is therefore an officer, not an employee. Under principles stated in that case and in full note to *Shelby* v. *Alcorn* 72 Am. Dec. 169, he is an officer. Though he is an officer the Constitution authorizes the legislature to create "officers"; the Constitution must mean this, as there would be no need of a provision in it to authorize the legislature to provide for mere employment.

Another defense against the award of a *mandamus* is that ch. 33, Acts of 1908 is unconstitutional because it deprives the county court of superintendence and administration of the fiscal

affairs of the county contrary to section 24 af article 8 of the Constitution, giving such jurisdiction to the county court. The act provides that the state tax commissioner shall be *ex officio* the chief inspector and supervisor of public offices, and he shall have power to perform the duties specified in the act. It provides that he shall formulate, prescribe and install a system of accounting and reporting in conformity with the provision of the act, which shall be uniform for all public offices and to all public accounts of the same class, which system shall exhibit true accounts and statements of all public funds collected, received and expended for any purpose by all public officers, employees or other persons. The accounts must show the receipts, use and disposition of all money and public property, the income therefrom, and, of all sources of public income and the amounts received and due from each source. The act provides that separate accounts be kept for every appropriation or fund made or levied by a taxing body, and payments made thereout, and various other provisions, calculated to show and account for all public moneys in the hands of public officers, and exhibit the state of the various funds. We do not realize how it can be said that the keeping of such accounts takes away the jurisdiction or superintendence of the county court over the fiscal affairs of the county. The act does not make such account conclusive either on the county or the officer. They are only exhibits or statements of the public money, and, instead of taking away the superintendence of the county court, are helpful to it as basis, guide, or light, helpful to the county court in its regulation or administration of such affairs. It is an aid to the county court; it is to further the exercise of its jurisdiction. But, aside from this, the Constitution, whilst it gives the county court superintendence and administration of the fiscal affairs of the county, yet gives it "under such regulation as may be prescribed by law." thus giving the legislature large power to direct, regulate, and control the exercise of the jurisdiction of the county court. It is quite difficult to say what is the limit of the legislative power herein, and yet more difficult to say that an act of the legislature, simply providing a system of book keeping by the public officers handling public money in order to show the receipts and disbursement thereof, deprives the county court of its lawful jurisdiction in the matter. This act

is only in furtherance of the Constitution, article 6, section 27, which requires the legislature to enact and enforce laws requiring sheriffs and other officers collecting or receiving public money to make annual accounts and settlements therefor. That is the mandate of the Constitution. What does this act do but provide for systematic accounts for public money? This act answers a great public need and is of vital importance to the people to secure accountability for, and the lawful disposition of, public money. We can harly conceive of any legislation in this line more salutary in the interest of the public. We can hardly conceive of functions more valuable and necessary and prudential than those of the tax commissioner under this act. We can hardly conceive of an officer whose services well performed will more redound to the public benefit. It will save to the people thousands and thousands of dollars of their money from misappropriation and embezzlement.

Further, as to the claim that the *mandamus* asked by the tax commissioner invades the jurisdiction of the county court, I remark that this *mandamus* is asked under sections 2 and 5 of chapter 33, that is, to require officers to keep accounts according to the system and forms prescribed by the tax commissioner under section 2. It is not under section 7, which authorizes the commissioner to require an audit or investigation of the financial affairs of public office. We express no opinion as to such audit. *Marlin* v. *Tyler,* 25 L. R. A. 838, and *Bryant* v. *Robison,* 70 Wis. 259, are cited by Tetricks counsel. So far as they go they sustain the position above taken; but I confess they are not authority for us. But they are not authority against us. They hold that acts establishing a county board of drainage were not repugnant to the constitution giving county commissioners superintendence of the fiscal county affairs. They so hold because drainage was held not a fiscal matter. The court did not decide the act void. It is said that if the acts had concerned fiscal affairs, the court would have held them void. How do we know? The cases are not in point here. No pointed authority is shown to uphold the position that chapter 33 takes from the county court its powers. We do not think so, at least as to this *mandamus.*

It is argued that chapter 33 is unconstitutional as delegat-

ing to the tax commissioner and the board of public works legislative power, and thus violates that well known principle of law that the legislature alone can·enact laws, and can not refer it to any officer to do so. In the first·place, I will say that it is useless in this case to enter upon a discussion of the intricate question of when an act is open to this objection, for the reason is plain.that this act is clearly not within that principle. The argument of counsel is. that this act does not take effect without the action of the tax commissioner and board of public works. The argument rests on the fact that the act directs the tax commissioner, called chief inspector, to formulate, prescribe and install a system of accounting and reporting in conformity with the provisions of the act as to public funds in the hands of officers, and provides that the system formulated by the inspector, before it becomes effective, must be approved by the board of public works. From that provision is built the argument of invalidity of the act. It is at once sufficient to reply that the act by no means depends on the assent or discretion of the inspector or board of public works. On the contrary, the chapter is a positive enactment that its provisions, directions and requirements shall be executed, shall be law. There is no shadow to justify the claim that the operation of the law shall be dependent on the will of the inspector or board. Under its own provisions it went into effect 1st January, 1909, without any reservation or condition that the inspector or board should approve or put it in force. It is true that it provides that the inspector shall make forms of accounting with the approval of the board of public works; but it leaves no discretion with them to say whether they will or will not make those forms or adopt the system of accounting prescribed by the act, but, on the contrary, commands them to do so. If they do not do so they disobey the command of the act, and I doubt not that the governor, or some one could compel the inspector to comply with the act. Is it possible to say that when an act fixes duties to be performed by public officers it is unconstitutional as a delegation of legislative power? If so, how many laws would fall? That is all that is contained in the question. So, the question of when an act is void, because it refers its going into effect to some other officer or body, really does not arise in this case. If the taking effect of this act were dependent on the volition or action of

the inspector, then such question would arise , and then we would meet ·with a legion of decisions "every which way". It is not always the case that such a provision makes the act void. Each instance stands on its own legs. In 18 Ann. Cas. 484, and note 489, will be found the cases on this subject. In *Haigh* v. *Bell*, 41 W. Va. 19, was involved an act authorizing the county court, upon petition of voters, to put in operation in its county an act to prevent hogs from running at large. The act was held constitutional. In *Field* v. *Clark*, 143 U. S. 649, was presented an act of Congress providing that upon the ascertainment by the president that certain articles exported from the United States were charged by another country tariff not reciprocal, but unequal, he could suspend a provision of the tariff act allowing articles from that country to come in free. The provision of the act was held not void as delegating legislative power to the president. We have a later case in that eminent court, the United States Supreme Court, *Union Bridge Co.* v. *United States*, 204 U. S. 364. The act involved conferred on the secretary of war power to say when a bridge over a navigable stream constituted an obstruction, and the question was whether that feature of the act made it obnoxious to the claim that it delegated legislative function to the president, and it was held that it did not do so. The court said that: "The true distinction is between the delegation of power to make the law, which involves a discretion as to what it shall be, and conferring authority or discretion, as to its execution, to be exercised in a pursuance of the law. The first can not be done; to the latter there can be no objections." The court said that half the statutes on our books are in the alternative, depending on discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them; but that it would not be 'said that the exercise of such discretion is the making of the law. That is going much further than we have to go in this case, because there is not a shade of discretion left by this act in the inspector to say whether or not the act shall operate; but he is commanded to execute it. Are the various acts creating railroad commissions to fix rates, or enforce rates fixed by law, unconstitutional? In fact, as I have said above, the contention in this case would nullify almost the code on the ground that it commits duties to be performed by officers. That

is all this act does as to the inspector and board of public works. It simply directs them to execute it. I refer here to the well considered case of *State* v. *Railway Co.*, 76 Kansas 467. There we find it laid down that the power of a legislature to delegate merely administrative functions is thoroughly established, citing *Atlantic Coast Line* v. *N. Car. Corp.*, 206 U. S. 1. There we find it laid down under a host of authorities that the legislature may not delegate its strictly legislative powers, but it may delegate authority to perform certain functions which are administrative in character and cannot well be performed by the legislature itself. Our act simply leaves it to those officers to execute the act, as many other statutes do. If they do not perform the functions which the act prescribes the act is a dead letter until compliance with it shall be enforced; but they must execute it; the act gives them no discretion; the act is a law, no matter what they do. But I need not have gone outside of our own authority. I have just met with the cases of *Rutter* v. *Sullivan*, 25 W. Va. 427, and *Ball* v. *Reed*, 13 Grat. 78. In the former case an act creating a municipal court for Huntington and providing that the act should be suspended until approved by the voters was not invalid as delegating legislative power. In the second case, it was held likewise as to an act establishing a system of free schools in a district, not to be carried into effect until the people should approve it.

The Constitution, article 6, section 27, requires the legislature to enact laws requiring officers receiving public money to make annual accounts and settlements. Laws have always existed to that end. The code 1906, section 33, chapter 39, has long provided that clerks of the county court shall keep proper accounts to show the money and claims due to the county, which are to be accounted for to the court, showing all claims placed in the hands of an officer. It requires him to keep a record touching the money of a county. For what purpose? In order that the county may be able to make settlements and get its dues from sheriff and other officers. The clerk is the keeper of the books and accounts of the county, to show its right. The code in section 32a, III., provides that when any money is paid to the treasurer, except taxes, the treasurer shall give to the person paying duplicate receipts, one of which shall be deposited

with the clerk, who shall, in a well bound book, charge the treasurer therewith and file the receipts in his office. This new act (chapter 33) is nothing more, in substance, than an act to carry out more effectually that old legislation. It is only an act to assure the accounting for public money. The statutes always made provisions for settlement and accounting for public money. This is only another act to more efficiently effectuate that end. It goes along with the old legislation. It contains no new idea. It simply provides new means to secure accountability in the fact that it sets up a new officer and directs him to prescribe a system of accounts to ascertain in the public right as to money in the hands of officers. It simply directs a certain officer to act in the matter to attain the end sought by the statute. It can not be said that it does more than simply to authorize a public officer to perform certain duties to carry this and other statutes *in pari materia* into execution. The legislature could not formulate a system of accounts, and of necessity had to commit it to a public officer. That is all the act does, so far as it is involved in this case. Chapter 33 is attacked as unconstitutional on the theory that it lessens the salary of the clerk during his term of office. We do not deem it requisite to discuss this matter. We simply say that the act does not pretend to deal in any wise with salary. It may be said to impose more duties on the clerk, but the legislature often does that, and surely can do so. But I do not say that it does impose additional duties, since the old law required him to keep practically the same accounts required by the new act. Doubtless the system directed by this act is more methodical than the former process and is less laborious, and surely will facilitate settlement. If kept as the inspector directs it there will *per se* be settlement.

Counsel for Tetrick says that this suit can not be sustained as there is no warrant for it. He says that the tax commissioner cannot sue to enforce the act until audit of an office has been made and a report of the investigation has been filed with the commissioner and the taxing body, and that only when such reports shall show misfeasance, malfeasance or nonfeasance, and only when the proper legal authority of the court, the Prosecuting Attorney, fails to take steps to enforce the public right, can the tax commissioner sue to do so? That provision is found in section 7; that applies to an audit of the office. We are not

dealing with that section or that audit. The plaintiff in this case does not allege any thing crooked in the discharge of duty by the clerk, save his failure to keep his accounts according to the formula prescribed and sent to him by the tax commissioner. Section 7 provides a suit by commissioner after an audit. But we have the case before us of a failure to keep the accounts according to the system which the commissioner prescribes. Suppose an officer refuses to conform to the system dictated by the tax commissioner under the act. Is there no remedy? We can not think that. We cannot think that the high purpose of this enactment is to be thus frustrated. Who is to exert the remedy? We think it is the tax commissioner. We deduce this from a reading of the act, evidently intending to vest its execution in that officer. The act says he shall be chief inspector and supervisor of public offices and have power and authority set forth in the act; and section 2 commands him to prescribe the system of accounting. Does it impose this duty and yet give no authority to enforce it? He has implied authority to enforce compliance by officers with the duties which the commissioner shall prescribe. The act gives no suit, in the case supposed, to any other officer. Public right must be enforced by public agents. The tax commissioner is the public agent in such case as we have in hand. We think he has such an interest officially as enables him to ask the writ of *mandamus*.

Is it necessary to invoke that worn principle of law, that a court approaches such a question with timidity and must take a statute as constitutional, unless it is very plainly repugnant to the constitution?

But for the fact that the act in question is, in all its parts, a very important one, and new, and the elaborate briefs of counsel, which, on both sides, evince thought and labor and ability, and have been very helpful to the court, I would not have written so much. I have not found the case to involve difficulty in decision.

We overrule the motion to quash the alternative writ and the demurrer to it, and retain the case for further proceeding.

*Motion to quash and demurrer to alternative writ overruled.*