# CHARLESTON.

STATE *ex rel.* ROBT. T. CUNNINGHAM *et al.* v. COUNTY COURT
OF MARION COUNTY *et al.*

Submitted March 21, 1923.    Decided April 10, 1923.

1.  COUNTIES—*Duty of Tax Commissioner to Formulate and Pre-*
    *scribe Forms for Publication of Financial Statements.*

    It is the duty of the tax commissioner to formulate and
    prescribe forms for the publication of financial statements
    of county courts, and for all reports of like character pub-
    lished, or that may be required to be published for the in-
    formation of the people regarding any or all details of the
    financial administration of public affairs.  (p. 523).

2.  SAME—*Essential Elements of Financial Statement of County*
    *Court Enumerated.*

    A financial statement of a county court required to be
    published by sec. 35, chap. 39, Code, which is prepared on,
    and responsive to, the form for such statement promul-
    gated and prescribed by the tax commissioner, and which
    shows under distinct heads an itemized account of its re-
    ceipts from all sources; and an itemized account of all its
    expenditures, with the amount paid out of each fund to a
    person or persons named, and the purpose for which paid as
    shown under each distinct head; together with a specific
    statement of the debts of the county showing the purpose
    for which each debt was contracted, when due, and up to
    what time the interest thereon has been paid; including a
    statement of all money paid for road purposes in each of
    the several districts of the county; is a substantial com-
    pliance with sec. 35, chap. 39, Code.  (p. 523).

3.  SAME—*Where Financial Statement of County Court Shows*
    *Total Amount Paid to Each Person Not of Each Fund and for*
    *What Purpose, Sufficient.*

    Where such statement shows the total amount paid to each
    person out of each fund and for what purpose paid the ob-
    ject and purpose of the statute is carried out, and there is
    a substantial compliance with the statute in that respect.
    (p. 523).

Petition for mandamus by the State, on the relation of
Robert T. Cunningham and others, against the County Court
of Marion County, to compel respondents to publish an item-

ized account of its receipts and expenditures for the fiscal year.

*Writ denied.*

*Trevy Nutter,* for relators.

*Frank R. Amos,* for respondents.

LIVELY, JUDGE:

Relators in this petition for mandamus charge that the county court of Marion county has not published an itemized account of its receipts and expenditures for the fiscal year ending June 30, 1922, by separate items, giving name of person to whom order was issued together with amount of such order, arranging same under distinct heads, and a specific statement of the debts of the county showing the purpose for which each debt was contracted, the time when it became due, and up to what time the interest thereon has been paid, including in the statement of the account a statement of all moneys paid for road purposes in each of the several districts of the county, in at least two newspapers of opposite politics published in said county for one week, as required by sec. 35, chap. 39, Code; nor has it attempted to comply with said statute, although more than four weeks has elapsed since its first regular session held on July 3rd 1922; and pray for mandamus to compel the county court to conform to and obey that statute. The county court, in its return to the alternative writ says that it has not made up and published the financial statement because the books for a long time, more than three months after the beginning of the fiscal year, have been in process of audit by the tax commissioner, and that after the audit had been completed the time and attention of its clerk has been taken up by other imperative duties; but that now, after due diligence, it has made up an itemized account of receipts, expenditures and indebtedness as required by law in accordance with the form prepared and authorized by the tax commissioner, and has directed the same to be published in the "Fairmont Times" and "West Virginian", newspapers of opposite politics published in said county; and exhibits the same with its return; and having

complied with the requirements of the alternative writ, prays that the peremptory writ be denied, and respondent dismissed with costs against relators.

Petitioners demur to the return, move to quash it, and reply that the financial statement filed with the return is not in compliance with the law, in that it does not set forth each order issued by the county court, giving the name of each person to whom order was issued and the amount thereof. Respondent claims that it has conformed to the requirement of the tax commissioner, used the form prescribed by that officer ꞏas it was compelled to do, and has substantially complied with the statute. Thus the issue is made up. We are called upon to inspect and consider the financial statement made up, certified to as correct, and ordered to be published, and to determine if the same meets the requirements of the statute. No briefs have been filed.

There seems to be no criticism of that part of the statement which pertains to the receipts which go to make up the various funds. For instance, the receipts of the county fund are listed by showing balance on hand July 1, 1921, net taxes collected 1921, tax forfeitures from tax commissioners, sheriff's tax sales, sheriff's tax redemptions, public service corporation taxes, delinquent personal property taxes, amount collected from commissioners of school lands, auditor's tax redemptions, circuit clerk's fees, county clerk's fees, interest from county depositories, sheriff's fees, prosecuting attorney's fees and miscellaneous receipts. The amount realized from each of these sources is given. Balance on hands from previous year is $12,965.01; net taxes for 1921 is $119,327.61; public service corporations, $38,854.28; county clerk's fees, $11,699.67, and so on; the grand total being $197,764.48. The items which enter into the sums reported from each source are not set out. To illustrate; the sum received from taxes 1921, $119,327.61, is not itemized to show how much was received from each individual tax payer; nor is it shown what public service corporations paid, nor the amount each paid to make up the total of $38,854.28 received from that source.

The statute requires an *itemized* account of the receipts, by separate items. A literal construction would require a

publishing of every receipt. This would make the statute cumbersome, impractical, and unreasonably, almost prohibitorily, expensive. We do not believe the Legislature intended such requirement, although the words used have that import. The tax commissioner, county courts and other levying bodies have for many years given it a practical construction, dictated by the rule of reason, and have not attempted to publish items of receipts except as above indicated. Nor is there any criticism in that respect by the relators. We simply advert to it for the purpose of showing that practical common sense has been used, and ought to be used in ascertaining the intention of the legislature in the construction of such statutes; and besides, it has an intimate bearing on the interpretation of the other portion of this statute requiring publication of itemized expenditures. The criticism and complaint of the financial statement is that it does not set forth each order issued by the county court giving the name of the person to whom order was issued. The special replication does not point out in what particular expenditures there were more than one order issued to the person named and which go to make up the amount as received by him. In argument it was said that the salary of Lee N. Satterfield, the county clerk, $3,999.96, the sum paid him for his year's services, is not itemized by giving the amount of each order issued to him each month; that there should have been twelve orders listed to him, instead of showing the total amount of all the orders in one item. What purpose could it serve? What beneficial information would the public receive thereby? The salary is fixed by law and is paid in aliquot parts each month. Every person is presumed to know the law—often a violent presumption. The publication of twelve orders to the county clerk for salary would be a vain and useless expenditure of the taxpayers' money. The rule of common sense applies with equal force in this instance as it applies to prevent the publication of each receipt by separate items realized from taxation and other sources. The object of requiring this financial statement to be published is to give the taxpayers information as to whom and for what purpose the public moneys are paid; from what sources, and the amount from

each source the public revenue is derived, and the condition of the county finances; the result of the stewardship of the public servants. It is a "financial statement," and not a county audit. It is in the nature of an index to the book, and not the book itself. From it detailed information may be readily derived by any solicitous or doubting taxpayer from the public accounts kept under the forms prescribed by the tax commissioner. The financial statement in respect to the other officers, the circuit clerk, sheriff, prosecuting attorney, county health officer, etc., and their deputies and assistants, gives the total paid each, and omits the monthly amounts paid each. The same reason applies to them as to the county clerk.

Criticism in argument was directed to an item of $1,452.16 to Rapid Delivery Co:, for auto hire for officers, in that it did not show the number of county orders issued to this company; then to J. D. Charlton, $662.32 for making arrests; to Frank Cook $1,161.50 for food supplies to the poor; to Consolidation Coal Co., $2,095.50 for food supplies to the poor; to Clark Johnson $1,100; to Jos. W. Ward Co., (rebinding) $5,121.50, and to Michaels Garage (automobile) $2,589, the last three items under the head of "contingent expense." Whether there was more than one order issued to each of these men the record does not disclose. The same may be said of the items charged to the county road fund under the sub-head, "Miscellaneous," namely, to Luten Bridge Co., $7,213.31; to same $2,077.99; City of Fairmont, $45,000; to same $2,822.22. Whether there was more than two orders issued to each of these recipients we cannot tell from the record.

Charged as expenditures from the county fund are the items for water, light, fuel and ice for the court house, infirmary and jail. The expenditure for water at the court house is listed as $1,165.94 and as having been paid to the city of Fairmont; for water to the infirmary $314.13, also paid to the city of Fairmont. Light for the court house, jail, and infirmary is listed in three sums under the proper heads as having been paid to Monongahela Power & Ry. Co.; and ice for the court house and jail in two items paid to City Ice Co.; fuel for court house and jail, in separate items, paid to

the M. P. & Ry. Co. It may be presumed that these expenditures for water, light, fuel and ice were paid monthly. That is the usual custom. But the total is given for each and we can see no useful purpose in setting out the amounts paid each month. What beneficial information would it give the public?

The items discussed serve to illustrate and visualize the general and special objection made to the sufficiency of the return. It is insisted that each order and to whom issued with the amount of such order, under distinct heads, should be published; that there should be a literal and exact compliance with the statute; and that the tax commissioner has no authority to prescribe forms for this purpose. We think the tax commissioner has the right to prepare the form for publication of financial statements of the county court. He is chief inspector and supervisor of public offices and it is his duty to formulate, prescribe and install a system of accounting and reporting which shall be uniform for all public offices, "and for all public accounting of the same class * * * and all reports published or that may be required to be published for the information of the people, regarding any or all details of the financial administration of public affairs." Sec. 2, chap. 10B Barnes' Code 1923. Pursuant to that duty he has prescribed the form used by respondents now before us, showing under appropriate headings and subheadings the income or receipts for each fund coming into the hands of the county court, and the various purposes for which it is expended, so that the public may readily see the source and amount of revenue for each fund, the purposes for which used and the person to whom paid, and the condition of that fund at the end of the fiscal year. The published statement is a condensed replica of the uniform accounting system installed by him. It will be observed that as far back as 1872, and possibly earlier, county courts were required to publish financial statements soon after the end of each fiscal year "showing the amount of the receipts and expenditures of the county during the previous fiscal year, arranged under distinct heads." Acts 1872-3, sec. 53, chap. 114. In 1899 the act was amended so as to require the state-

ment to show ''name of person to whom order is issued, together with amount of such order, arranging same under distinct heads.'' Acts 1899, sec. 35, chap. 52. This requirement has remained unchanged, is now found in sec. 35, chap. 39, Code, and is the statute on which this action is based. In 1908 the tax commissioner was made ex-officio chief inspector and supervisor of public offices, with the power and duty to prescribe forms as above set out. The legislature is presumed to know all former laws upon any subject which is affected by its legislation. What was the purpose of requiring the tax commissioner to prescribe forms for these financial statements? Some good reason must have moved them to do so, based upon the years of observation and experience in the publication of these statements. These statutes relating to the same subject matter must be considered *in pari materia.* The legislature often enacts laws imposing duties upon officers or agencies ''giving them expressly or by necessary implication an incidental discretion to employ the proper means to fill up and regulate the details for themselves and subordinates, though the exercise of that discretion be *quasi* legislative. This is illustrated by laws empowering courts in the exercise of their jurisdiction to adopt rules of practice and forms of procedure.'' 1 Lewis Suth. Stat. Con. sec. 88. Another familiar rule of statutory construction is that ''Statutes must receive a reasonable construction, reference being had to their controlling purpose, to all their provisions, force and effect being given not narrowly to isolated and disjointed clauses, but to their plain spirit, broadly taking all their provisions together in one rational view. Neither grammatical construction nor the letter of the statute nor its rhetorical framework should be permitted to defeat its clear and definite purpose to be gathered from the whole act, comparing part with part. . . . . . . A statute must receive such reasonable construction as will, if possible, make all its parts harmonize with each other, and render them consistent with its scope and object.'' And when we consider the provisions of sec. 35, chap. 39, Code, relating to publication of financial statements, the controlling purpose of which is to advise the public of the financial status of the funds and to

whom and in what sums disbursements have been made, together with the duty of the tax commissioner to prescribe forms therefor, we may reasonably conclude that the form prescribed by the tax commissioner is a substantial compliance with the statute, and that it is not necessary to list in the published statement every draft issued to the same person on the same fund for one or more like obligation or service. The statement as prepared and filed with the return has received the approval of the tax commissioner. The system and forms for public accounting formulated by the tax commissioner must be followed. *Blue* v. *Tetrick,* 69 W. Va. 742. If various drafts are issued to the same person on the same fund for the payment of one contract or obligation no more information is contained than if the total payment to the same person is shown as one item. The statute does not require the date of the order nor a detail of the purpose of the payment. The purpose is set out in the heading, and each expenditure must be placed under distinct heads. If the statement were to set out the amount of each separate order or payment, the same could not always be classed under distinct heads, for the reason that often an order contains payments which would belong under several heads or classifications. If the county owes the same person for a number of different items, it can and often does, issue one draft for all, instead of, say, five or six different drafts. Under the form prescribed by the tax commissioner the amount paid for each purpose would be shown under the proper head. We must give the statute practical operation. The financial statement is more of a detail index of financial transactions, and was not designed to be a complete audit giving full information.

We are of the opinion that the verified statement ordered to be published and filed with the return is a substantial compliance with the statute, and constitutes a sufficient return to the alternative writ. The peremptory writ will be denied. The relators will be awarded costs.

*Writ denied.*