STATE OF WEST VIRGINIA *ex rel.* DAILY GAZETTE COMPANY, *a corporation*

*v.*

THE COUNTY COURT OF KANAWHA COUNTY, WEST VIRGINIA, *a corporation, et al.*

(No. 10457)

Submitted April 8, 1952. Decided April 29, 1952.

128

Fox, Judge, not participating.

*Peters, Snyder, Merricks & Leslie, H. L. Snyder* and *H. L. Snyder, Jr.,* for relator.

*Kay, Casto & Chaney* and *Dale G. Casto,* for respondents.

Lovins, Judge:

By this proceeding, the relator, Daily Gazette Company, a corporation, of Charleston, Kanawha County, seeks a writ of mandamus to compel respondents, the County Court of Kanawha County, a corporation, Mont Cavender, J. M. Slack, Jr., and William G. Day, Commissioners, and Paul E. Wehrle, Clerk, to prepare and publish in the Charleston Gazette, a newspaper of Democratic party affiliation, published by relator, and in a paper of opposite politics, a supplemental and itemized statement showing the names of all persons who have served as petit and grand jurors in the courts of record of Kanawha County during the fiscal year ending June 30, 1950, and the amount paid each.

By a demurrer to the original and amended petitions, respondents assert that they are not required by law to prepare and publish such statement. There is no dispute as to the facts alleged in the original and amended petitions and hence those facts are taken as true.

The annual financial statement of respondents for the fiscal year ending June 30, 1950, as prepared and pub-

lished, did not set forth the names of the persons who had served as petit and grand jurors during the fiscal year and the amount paid each. The statement contained merely a total sum repaid to the sheriff for the expense of paying the jurors under the general heading "Court expense", and reads as follows: "Richards, Carson,—Sheriff .... $66,-145.41." That sum included payment to 1130 persons who had served as jurors, and was paid to the persons so serving by the sheriff upon certified copies of orders issued by the clerk of the Circuit, Intermediate and Common Pleas Courts, to each juror, stating the name of the juror, the number of days served, mileage traveled, and the rate of payment.

Forms which have been prescribed at various times by the state tax commissioner for the use of county courts in making their annual statements require that payments to jurors be itemized by setting forth the name of each juror and the amount paid each. It is reasonably clear from the allegations of the petition that such form was followed by the respondents from the year 1933 until the fiscal year ending June 30, 1950.

The respondents argue that the statement as published is sufficient, and rely upon an opinion of the attorney general, dated November 2, 1950, given in response to a request from the state tax commissioner, to the effect that itemization of jurors' names and amounts paid them is not necessary, and that the practice of consolidating the payments in the form of an order of the county court repaying the sheriff for his expenditures made in the payment of jurors is sufficient.

After receiving the above mentioned opinion of the attorney general, the state tax commissioner has refused to require respondents to publish a supplemental financial statement itemizing the payments made to jurors.

It would seem that there is now no uniformity in the practice followed by the various county courts of the state, in publishing financial statements, some itemizing such payments, and others using the same method as that complained of here.

The issue here involved arises from the provisions of Code 7-5-16, which reads in part as follows: "The county court of every county, within four weeks after the first session held after the beginning of each fiscal year, shall cause to be published in at least two newspapers of opposite politics * * * an itemized account of the receipts and expenditures of the county during the previous fiscal year by separate items, giving the name of the person to whom the order is issued, together with the amount of such order, arranging the same under distinct heads * * *."

Petit jurors attending upon a session of a court of record are entitled to receive as compensation not less than two, nor more than five dollars, to be fixed by an order entered of record by such court, and the same mileage as is allowed to witnesses, such compensation and mileage being payable out of the county treasury, except for the period a person serves as a juror in a felony case, in which instance it is paid out of the state treasury. Code 52-1-21, as amended by Chapter 78, Acts of the Legislature, 1945.

Compensation is payable upon a certified copy of an order made by the court of record, delivered to the juror, showing the amount of such compensation and the mileage allowed. The order is then presented to the sheriff who is required to pay the amount so allowed. If the sheriff fails to pay such allowance as required by the statute he "* * * may be proceeded against as for a contempt of court." The amount paid by the sheriff to the juror shall be "repaid to the sheriff out of the state treasury or out of the county treasury, upon the production of said proof that the same has been paid by him." Code 52-1-24, as amended by Chapter 58, Acts of the Legislature, 1941.

Grand jurors in attendance upon a court of record are paid compensation and mileage in the same manner as petit jurors. Code 52-2-13, as amended by Chapter 56, Acts of the Legislature, 1943.

In the instant proceeding, the jurors were paid by the sheriff upon orders made by the courts of record of Ka-

nawha County to the jurors in attendance upon such courts, and the amount of $66,145.41 paid to the sheriff is the aggregate of the items paid by him under the authority of the statutes above mentioned.

There is no allegation in the petition that the relator is willing to accept the compensation prescribed for such publication by Code 59-1-34, but since relator has published the original statement for the fiscal year 1949-50, and is now insistent upon the publication of a supplemental statement containing the names of the jurors and the amount paid each of them for the year ending June 30, 1950, it is to be supposed that the relator is willing to accept the rate of compensation prescribed by law for such publication. That being true, if this were a case involving refusal by respondents to publish a statement that is required by law, the relator would be entitled to maintain this proceeding. Code 59-1-34. *Publications* v. *Lambert,* 112 W. Va. 22, 163 S. E. 858; *State* v. *County Court,* 109 W. Va. 31, 152 S. E. 784; *Publishing Co.* v. *County Court,* 75 W. Va. 305, 83 S. E. 993; *State* v. *Wade* (Mo.), 231 S. W. 2d 179; *State* v. *Tauer* (Minn.), 227 N. W. 499. See *Wolfe* v. *County Court,* 119 W. Va. 362, 193 S. E. 556. Here, however, a financial statement was prepared and published for the fiscal year ending June 30, 1950. This is not a case wherein no statement was published. The only complaint on the part of relator is that the statement, as published, did not include the names and amounts, as above mentioned.

The relator contends that under pertinent statutes and decisions of this court, the state tax commissioner has the power to prescribe the form for publication of the annual financial statement. This contention is supported by the cases of *Blue* v. *Tetrick,* 69 W. Va. 742, 72 S. E. 1033, and *Cunningham* v. *County Court,* 93 W. Va. 521, 117 S. E. 232. See Code 6-9-2.

The state tax commissioner, prior to the fiscal year 1950-51, had prescribed forms for financial statements, which include the amount paid to each juror. The commissioner, upon receipt of the opinion of the attorney general above mentioned, has refused to compel respondents to prepare

and publish a supplemental financial statement for the fiscal year 1949-1950, listing the jurors who had received compensation and mileage during that year. This would indicate a change of policy on the part of the state tax commissioner.

We now come to the decisive question. Is Code 7-5-16, insofar as it relates to itemization of amounts paid to each juror, imperative and mandatory, or is it such a statute that, in applying it, this court may recognize the rule of substantial compliance?

This court has held that a construction given a statute by the officers charged with the duty of executing it ought not to be discarded without cogent reason. *Daniel* v. *Simms,* 49 W. Va. 554, 39 S. E. 690; *Brandon* v. *Board of Control,* 84 W. Va. 417, 420, 100 S. E. 215; *Insurance Co.* v. *Board,* 111 W. Va. 161, 169, 161 S. E. 427. "Where a statute is of doubtful meaning the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous." *Brandon* v. *Board of Control, supra.*

Is Code 7-5-16 of doubtful meaning or ambiguous? In the case of *Cunningham* v. *County Court, supra,* this court, in discussing that statute, in the course of the opinion said that, "A literal construction would require a publishing of every receipt. This would make the statute cumbersome, impractical and unreasonably, almost prohibitorily expensive. We do not believe the Legislature intended such requirement, although the words used have that import. The tax commissioner, county courts and other levying bodies have for many years given it a practical construction, dictated by the rule of reason, and have not attempted to publish items of receipts except as above indicated."

An analysis of the original record and opinion in the case of *Cunningham* v. *County Court, supra,* discloses that this court awarded an alternative writ of mandamus upon

a petition alleging that no financial statement had been published by the respondent for the fiscal year 1921-22. The respondents in the return to the alternative writ alleged that the clerk of the county court had been duly diligent in making up the financial statement, but on account of the clerk's attention having been given to more urgent matters, a financial statement had not been published. Respondents then alleged that since the alternative writ had been sued out by the relator, a financial statement had been prepared and published, and exhibited with such return a copy of the financial statement. Such statement included a list of the names of persons, headed by the word "jurors", written in ink, showing the amount paid to each person.

This court, upon consideration of the return to the alternative writ and a replication thereto in which relator took the position that all the amounts paid out by the respondents should have been itemized, denied the peremptory writ of mandamus.

In so doing, this court established three propositions: (a) that it is the duty of the state tax commissioner to formulate and prescribe forms for the publication of financial statements of county courts; (b) that the financial statement of the respondents, in the form prescribed by the state tax commissioner, had shown under distinct heads an itemized account of all expenditures, the amount paid out of each fund to persons named and the purpose for which paid as shown under each distinct head, and was a substantial compliance with the statute; (c) that a financial statement should show the total amount paid to each person out of each fund and for what purpose paid. The court, at page 528, said that "it is not necessary to list in the published statement every draft issued to the same person on the same fund for one or more like obligation or service."

We are inclined to the opinion that reason and authority require the present statute to receive a reasonable construction, it being the identical statute, with a minor

change of one word, as the statute considered by this court in *Cunningham* v. *County Court, supra.*

No good or useful purpose would be served by publishing the names of the jurors who have been paid by the sheriff of Kanawha County for their compensation and mileage for the fiscal year ending June 30, 1950. The names of such jurors together with the number of days they were in attendance, the mileage traveled and the aggregate amount received by them are shown in records of the courts they attended. The respondents have substantially, if not literally, complied with the statute.

For an application of the rule of substantial compliance in a case which involved a statute having similarities to the one here considered, see *State* v. *Commissioners of Washington County* (Ohio), 47 N. E. 565.

As noted above, the practice of incorporating in, and publishing the names of jurors and amounts paid them in former annual financial statements by some of the county courts of this state was in accord with the then existing policy of the state tax commissioner. This opinion is not a basis for the correction of past statements, the revision of the amounts paid for such publications, or a claim that such officers in authorizing such publications have indulged in improper expenditures of public funds.

In order to be entitled to the remedy of mandamus, a relator must show a clear legal right to the performance of the duty sought to be enforced. *State* v. *Comp. Com'r.,* 131 W. Va. 442, 48 S. E. 2d 9; *State* v. *Board of Park Com'rs.,* 131 W. Va. 417, 47 S. E. 2d 689; *Goloversic* v. *Arnold,* 128 W. Va. 272, 36 S. E. 2d 209; *Childers* v. *Road Commissioner,* 124 W. Va. 233, 19 S. E. 2d 611; *Ebbert* v. *Bouchelle,* 123 W. Va. 265, 14 S. E. 2d 614; *Brumfield* v. *Board,* 121 W. Va. 725, 6 S. E. 2d 238; *Rusinko* v. *Shipman,* 111 W. Va. 402, 162 S. E. 316.

We do not think that the relator has shown a clear, legal right to the relief sought in this proceeding and therefore the peremptory writ of mandamus is denied.

*Writ denied.*