**Arthur B. HYMAN, Myra K. Neumann, and Walter B. Neumann, as Executors of the Estate of Jennie W. Kohnstamm, deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.

Sept. 26, 1960.

Paskus, Gordon & Hyman, New York City, Arthur B. Hyman, Freda B. Stolz, New York City, of counsel, for plaintiffs.

S. Hazard Gillespie, Jr., U. S. Atty., Mark I. Cohen, Asst. U. S. Atty., New York City, of counsel, for defendant.

BICKS, District Judge.

In this action to recover estate taxes allegedly erroneously and illegally as-

sessed against and collected from the plaintiffs, both sides have moved for summary judgment. The facts are not in dispute. Jennie W. Kohnstamm, the decedent, had a brother who was the insured under a policy of life insurance in the face amount of $15,000. On October 14, 1942 he executed an instrument whereby he elected that settlement of the proceeds of the policy shall be made with his sister, the decedent, as direct beneficiary [1] in accordance with the provisions of Option A contained in said policy.[2] The insured expressly reserved the right to change or revoke the designation.

Decedent's brother died on July 2, 1948 without changing or revoking the designation. It is conceded that, vis-a-vis his sister, insured's death generated an exercisable general power of appointment with respect to the life insurance proceeds. She died on October 26, 1954, without having exercised the power. The issue of whether that power of appointment is taxable as part of her gross estate turns upon construction of the word "created" as used in 26 U.S.C. § 2041.

The statute affords different tax treatment to powers of appointment "created" on or before October 21, 1942 and those "created" after said date. As to the former, there is includible in the gross estate of the donee, powers of appointment, only if and to the extent exercised; as to the latter, they are includible in the gross estate whether exercised or not.

The critical date thus is, October 21, 1942 and the critical event, the creation of the power of appointment. The Government argues that since the insured reserved the right of revocation, it was his death without exercising that right which "created" the power of appointment. Implicit in this contention is the failure to distinguish between creation of a power and the exercisability thereof. Obviously, if the insured had not during his lifetime designated his sister as direct beneficiary pursuant to the terms of the policy, his death would not have given rise to any rights in her favor to the proceeds of the policy. His death terminated the power he had reserved to himself to revoke the designation of the beneficiary. That which he created during his lifetime, i. e. the general power of appointment in favor of his sister, thus survived. To urge that survival of the power is tantamount to creation thereof at the time of death does violence to the language of the statute and to its legislative history. See Senate Report No. 382, June 4, 1951, U.S.Code Cong. & Admin. Service, p. 1530 (1951); United States v. Merchants National Bank of Mobile, 5 Cir., 1958, 261 F.2d 570, 575; Turner v. United States, D.C.W.D.Mo.1959, 178 F.Supp. 239; Hubner v. United States (S.D.Cal.1960) 187 F.Supp. 659 (60–1 U.S.T.C. Par. 11,915); Estate of Rosenthal v. C. I. R., 1960, 34 T.C. No. 17.

The authorities relied on by the Government are clearly inapposite. In none of them is 26 U.S.C. § 2041 involved. They deal, rather, with taxability to the donor's estate of the value of property transferred in which all rights incident to ownership are not conveyed. They would be controlling if taxability of the insurance proceeds in the estate of the insured were involved. Here, the proceeds were included as part of the gross estate of the insured.

Plaintiffs' motion for summary judgment granted.

1. Provision was made for contingent beneficiaries, however, it has no bearing on resolution of the critical issue presented on the instant motions.

2. Option A as modified provided that upon the death of the insured the proceeds of the policy were to remain on deposit with the Company, the Company agreeing to make monthly payments at the minimum rate of $2.47 per $1,000 of the amount so retained, the first payment being due one month after the insured's death, with the privilege in the beneficiary, the decedent, of withdrawal of the entire proceeds at the time any such interest payment becomes due.