**UNITED STATES of America,**
**Appellant,**

**v.**

**Winifred H. TURNER, Executrix of the Estate of Alice H. Turner, Deceased,**
**Appellee.**

**No. 16478.**

United States Court of Appeals
Eighth Circuit.

March 8, 1961.

L. W. Post, Atty., Dept. of Justice, Washington, D. C., for the appellant. Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., Edward L. Scheufler, U. S. Atty., and J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., were with him on the brief.

Kent E. Whittaker, Kansas City, Mo., for the appellee, and Elmer B. Hodges, Gage, Hodges, Moore, Park & Kreamer, Kansas City, Mo., were with him on the brief.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

The sole issue here is whether this Missouri decedent, Alice H. Turner, at her death in 1955 possessed, with respect to certain insurance proceeds, a general power of appointment "created on or before October 21, 1942" so that those proceeds were free from federal estate tax. The governing statute is § 2041 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2041.[1] The District

---

1. "§ 2041. Powers of Appointment
   "(a) In general.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—
   "(1) Powers of appointment created on or before October 21, 1942.—To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—
   "(A) by will, or
   "(B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive;
   "but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. * * *"
   "(2) Powers created after October 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, * * *"
   "(b) Definitions.—For purposes of subsection (a)—
   "(1) General power of appointment.—The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; * * *"

We regard a donated power of appointment, such as the one here involved, as governed exclusively by § 2041 and as not subject to § 2033. Helvering v. Safe De-

Court held that the powers were created prior to October 1942 and that the fund in question was not taxable. Turner v. United States, D.C.W.D.Mo., 178 F.Supp. 239.

The pertinent facts are either admitted by the pleadings or are stipulated. We set them forth chronologically:

(a) September 1911. Two $5,000 whole life policies were issued by The Northwestern Mutual Life Insurance Company upon the life of Frederick H. Turner, husband of the present decedent. The insured possessed all rights under these policies.

(b) March 1935. Mr. Turner executed a supplement applicable to both policies revoking prior beneficiary designations and option settlements. By this instrument he named his wife as beneficiary and their two children as contingent beneficiaries. He specified that the death proceeds were to be retained by the insurance company under Option A of the contracts; that the insurer was to pay Mrs. Turner an annuity in minimum monthly instalments; and that she was to have "the privilege of surrender and withdrawal". The right to change or revoke this designation was retained by the insured. The supplement was accepted by the insurance company and made a part of the policies.

(c) July 12, 1948. Mr. Turner died without having revoked or changed the 1935 supplement in any respect.

(d) December 11, 1955. Mrs. Turner died testate [2] without having exercised to any extent her privilege of surrender and withdrawal.

(e) December 20, 1955. The Turners' daughter, Winifred, was appointed executrix of her mother's will.

(f) March 8, 1957. The executrix filed a timely federal estate tax return for her decedent's estate. The fund held by the insurer under the 1935 designation, and constituting the death proceeds of the two policies upon the insured's life, was included in the gross estate in this return and the tax shown by the return was paid in full.

(g) May 1958. The present action was instituted by the executrix to recover that portion of the federal estate tax attributable to the inclusion of this fund.[3] As has been noted, she prevailed below.

The situation, therefore, is the factually simple one involving an insured's revocable designation of beneficiaries and option settlements prior to October 21, 1942; the absence of any further action on his part during the remainder of his life; his death after 1942; the emergence at that time of the insurance fund through the maturing of the policies; and the absence of any surrender or withdrawal action by the widow-beneficiary during her life. The widow thus died possessed of complete power over the fund. Nevertheless, she did not exercise that power in any respect and, by the terms of the insured's 1935 designation, the fund devolved for the benefit of the children named as contingent beneficiaries.

Mrs. Turner's possession of this matured command over the appointive property could render that property validly

posit & Trust Co., 316 U.S. 56, 57–63, 62 S.Ct. 925, 86 L.Ed. 1266.

2. The residuary clause of the decedent's will specifically embraced property "over which I have any testamentary control or power of appointment whatsoever at the time of my death". No claim is made on this appeal, or in the trial court, that this testamentary provision applied to the insurance fund in question and thereby made it taxable. Presumably this is on the theory that the 1935 designation granted the decedent the privilege of surrender and withdrawal only during

her lifetime. In any event, because no point is made of this fact we exclude it from consideration here. Govero v. Standard Oil Co., 8 Cir., 192 F.2d 962, 963–964; Publicity Building Realty Corporation v. Hannegan, 8 Cir., 139 F.2d 583, 587.

3. A minor issue concerning the deductibility of an inheritance tax appraiser's fee is also involved in the action. This issue, too, was decided in favor of the plaintiff but the government restricts its appeal to the insurance fund issue.

includable in her gross estate if Congress so prescribed. See Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. The question here, however, is not one of power to tax but is whether the statute, in its definition of the gross estate, embraces these particular insurance proceeds.

If a power is a general one as defined in § 2041(b) (1) and if it was created on or before October 21, 1942, the appointive property is includable in the gross estate and taxable only if the power is exercised. If, in contrast, the general power was created after that critical date, the property is taxable irrespective of exercise or non-exercise of the power. There is no dispute here as to this power being a general one and there is no dispute as to its not having been exercised. The controversy therefore centers around the date of the power's creation. Unfortunately, the statute does not attempt to define the word "created" except as to certain testamentary powers. § 2041(b) (3).[4]

The executrix claims that the power of appointment possessed by the decedent was created, within the meaning of the statute, in March 1935 when the insured executed his supplement and when the insurance company made that supplement a part of the insurance contracts; that it thus was a pre-1942 general power; and that the appointive property is to be excluded from the gross estate by the specific provisions of § 2041(a) (1). She urges that the insured was the creator, that his affirmative act of creation was in March 1935 and that his death in 1948 was not the act which created the power.

The government, on the other hand, emphasizes that the insured retained all rights under the policies; that his 1935 supplement was revocable; that it is a "stark fact that the husband gave his wife nothing when he executed the settlement designation in 1935"; that he could always have deprived his wife of all interest in the policies and their proceeds; that the policies did not mature and their proceeds did not come into being until the insured's death in 1948; that only at that time did the power of appointment become effective in the sense that it was vested and in the additional sense that there was a fund over which it could operate; that only at the insured's death was the power created and the appointive property rendered capable of valid inclusion in the gross estate; and that the legislative history supports this analysis. Its position here is in accord with Rev.Rul. 278 issued by the Internal Revenue Service in 1953 (with respect to the 1939 Code, as amended), 1953–2 C.B. 267,[5] and with an example, as to the parallel trust situation, set forth in § 20.-2041–1(e) of the current Regulations issued in 1958.[6]

---

4. § 2041(b) (3). "Date of Creation of Power.—For purposes of this section, a power of appointment created by a will executed on or before October 21, 1942, shall be considered a power created on or before such date if the person executing such will dies before July 1, 1949, without having republished such will, by codicil or otherwise, after October 21, 1942."

5. " * * * It is the position of the Internal Revenue Service that a power of appointment conferred in a life insurance policy that does not become effective until the death of the insured is not 'created' within the meaning of section 811(f) of the Code so long as the insured retains the right to surrender the policy.

"In the instant case it is held that since the insured retained until his death in 1950 the right to surrender the policies, the power of appointment conferred upon his wife, the present decedent, with respect to the proceeds of such policies, was 'created' within the meaning of section 811(f) of the Code at the time of the death of the insured in 1950 and not at the date of execution of the settlement options. * * *"

6. "For example, assume that A created a revocable trust before October 21, 1942, providing for payment of income to B for life with remainder as B shall appoint by will. If A dies after October 21, 1942, without having exercised his power of revocation, B's power of appointment is considered a power created after October 21, 1942."

A review of the legislative history is interesting but not determinative. The first reference in the federal estate tax law to property subject to a power of appointment appeared in the Revenue Act of 1918 (February 24, 1919).[7] § 402(e) of that Act included in the gross estate "any property passing under a general power of appointment exercised by the decedent" by methods therein described. This provision remained essentially unchanged through succeeding revenue acts[8] until that of 1942. § 403(a) of the 1942 Act amended § 811(f) of the 1939 Code to provide for the taxation of certain special or limited powers and, as well, the mere possession of unexercised general powers. The Powers of Appointment Act of June 28, 1951, was in effect, retroactive to the date of the 1942 Act and, with a minor exception not relevant here, restored the law in existence prior to 1942 so far as powers created before that date were concerned. The reasons for this 1951 restoration were a desire for simplicity, fairness and definiteness, the avoidance of hardship on the unwary, and a realization that the power of appointment provisions were not a source of an appreciable amount of revenue. Sen.Rep. No. 382, 82d Cong., 1st Sess., p. 3 (2 U.S.Code Cong. & Adm.Serv. 1951, pp. 1530–1532).

Two Courts of Appeals, four District Courts (including the one below), and the Tax Court all have held, when this issue has been presented, that the appointive property is not taxable. United States v. Merchants National Bank of Mobile, 5 Cir., 261 F.2d 570, affirming Merchants National Bank of Mobile v. United States, D.C.S.D.Ala., 156 F.Supp. 827; United States v. Hubner, 9 Cir., 285 F.2d 29, affirming Hubner v. United States, D.C.S.D.Cal., 187 F.Supp. 659; Hyman v. United States, D.C.S.D.N.Y., 187 F.Supp. 661; Estate of Rosenthal, 34 T.C. 146 (reviewed by the Court). Some of these cases (Hubner and Merchants National Bank) involve an inter vivos trust, another (Hubner) a matured insurance policy, and the others (Hyman and Rosenthal) an insurance designation made prior to maturity. The Merchants National Bank case involves the 1939 Code (after the 1951 amendments) instead of the 1954 Code. Yet in each of these cases the statute is the same and the vital facts are the same: The designation before October 21, 1942, by one person (donor or insured) of another person as a trust or insurance beneficiary with a general power of appointment over property (the trust assets or the insurance); the revocable character of that designation; no further action thereafter by either of the two persons during their respective lives; the death of the first person after 1942; and the subsequent death of the beneficiary while still possessed of the unexercised power.[9] We therefore regard all these decisions as pertinent authority. See also Freeman, If This be Simplification—a View of Pre-1942 Powers of Appointment and the 1954 Internal Revenue Code Section 2041, 40 Cornell Law Quarterly 500, 505 (1955). We know of no opposing judicial determina-

7. The Revenue Act of 1916 which introduced the federal estate tax contained no specific reference to property subject to a power of appointment. The Supreme Court held that property passing under a testamentary execution of a general power of appointment was not includable in the gross estate as defined by § 202 of the Act. United States v. Field, 255 U.S. 257, 41 S.Ct. 256, 65 L.Ed. 617.

8. Revenue Act of 1921, § 402(e); Revenue Act of 1924, § 302(f); Revenue Act of 1926, § 302(f); Revenue Act of 1932, § 803(b); Internal Revenue Code of 1939, as originally enacted, § 811(f).

9. We recognize that the revocable trust is somewhat different from the insurance situation in that a definite present res is involved with the trust, whereas the insurance policy may not yet have matured. Immediate contractual rights are involved in both cases, however, and in the situation of the revocable trust the res itself may be changed by additions or withdrawals. The fact that an insurance contract has not matured does not mean that there is no res in existence; it will be transformed, of course, upon maturity.

tion. There is, however, at least one contrary comment which antedates the cited cases. Lowndes and Kramer, Federal Estate and Gift Taxes (1956), Ch. 11, § 10, p. 259.

We are in accord with the decided cases and we find the following considerations, in the aggregate, fully persuasive:

1. The statute makes no distinction between revocable and irrevocable powers.

2. The statute employs two terms: "created" and "exercised". These are not synonyms. A power may not be exercisable until some time after the execution of the instrument formulating it but this does not mean that it has not been created theretofore. § 20.2041–1(e) of the present Regulations under the 1954 Code (promulgated June 24, 1958, by T.D. 6296, 23 F.R. 4539) itself seems to recognize this both by an example [10] and by stating, in so many words, albeit in a slightly different connotation, "A power of appointment is not considered as created after October 21, 1942, merely because the power is not exercisable or the identity of its holders is not ascertainable until after that date".[11]

3. The government's position here may be due to the failure to distinguish between the creation of a power and the event which makes it exercisable.

4. The word "created", which the statute uses, implies, in its ordinary meaning, the bringing of something into being and the inception or beginning of something not theretofore in existence.[12] It "is an appropriate term to describe a right which is brought into being by a provision of a contract". Jameson v. Chanslor-Canfield Midway Oil Co., 176 Cal. 1, 167 P. 369, 370. This may be something less than later irrevocability or full growth into maturity. It is usually tied into the effective date of the governing instrument. 72 C.J.S. Powers § 9, p. 407; 41 Am.Jur., Powers, § 6, p. 810.

5. Any rights of the wife here are certainly traceable to what was done by her husband in 1935. The fact that her power of appointment vested at the insured's death only in 1948, when it became irrevocable and applicable to a matured insurance fund of $10,000, did not make it something not theretofore in existence or not theretofore "created". The power assumed permanency and the appointive property became identified as of the insured's death but the roots of the power existed before his death and before October 21, 1942.

6. It is not enough to say that the revocable character of the insurance arrangement here, so long as the insured lived, operates in derogation of the creation or the existence of the power. Revocability in itself implies existence and earlier creation; if this were not so, there would be nothing to revoke.

7. The significance of the 1948 event of the insured's death is that it only terminated his ability to revoke the existing beneficiary designation and power of appointment.

10. " * * * As another example, assume that F created an irrevocable inter vivos trust before October 21, 1942, providing for payment of income to G for life with remainder as G shall appoint by will, but in default of appointment income to H for life with remainder as H shall appoint by will. If G dies after October 21, 1942, without having exercised his power of appointment, H's power of appointment is considered a power created before October 21, 1942, even though it was only a contingent interest until G's death. * * *"

11. This, of course, is in contrast with the section's first example set forth in foot-

note 6, supra. The government's position necessarily is that the two provisions of this section of the Regulations are not inconsistent; the distinction must rest on whether the donor of the power possessed a right to revoke after October 21, 1942.

12. Roth v. State, 158 Ind. 242, 63 N.E. 460, 469; Commonwealth ex rel. Womer v. Reese, 293 Pa. 398, 143 A. 127, 129; Wright v. Ritz Theatre Co., 211 S.C. 161, 44 S.E.2d 308, 309; Blue v. Tetrick, 69 W.Va. 742, 72 S.E. 1033, 1035. See also Webster's New International Dictionary (Second Edition 1960).

8. Because of the specific exclusionary provisions of the statute, there is no necessary correlation between taxability of the appointive property in the wife's estate and taxability of the insurance proceeds in the husband's estate. These proceeds were clearly includable, under § 811(g) (2) of the 1939 Code, as amended, (corresponding to § 2042(2) of the 1954 Code), in the gross estate of the husband. This fact, however, is not conclusive upon the issue in the wife's estate; the latter is governed by § 2041.

9. § 2041(b) (3), footnote 4, supra, lends at least some definite statutory emphasis and support to the distinction between creation and exercisability of a power, for it goes so far as to say that a power "created" by a will executed on or before October 21, 1942 shall, under certain circumstances, be considered a power created on or before that date even though the testator dies after that date. This is in the face of the long established principle that a will is only inchoate or ambulatory until the death of the testator. 57 Am.Jur., Wills, §§ 15, 1209; 94 C.J.S. Wills § 127(2).

10. The gift tax cases cited by the government are not persuasive. While the estate tax and the gift tax have been said to be in pari materia, Burnet v. Guggenheim, 288 U.S. 280, 286, 53 S.Ct. 369, 77 L.Ed. 748; Estate of Sanford v. Com'r, 308 U.S. 39, 44, 60 S.Ct. 51, 84 L.Ed. 20, the two taxes are not mutually exclusive. The mere fact that the insured by his 1935 settlement effected no federally taxable gift does not conclusively require taxability of the appointive property at the wife's death. The gift tax standard is whether a gift has been effected. The standard here is whether a power has been created.

The contrary argument based upon the proposition that the "creation" of a power should be coincident with valid includability of the appointive property in the holder's gross estate is not unattractive. This gives creation a pragmatic interpretation. We feel, however, that too much time has elapsed and too many cases have been decided for us now to establish a standard of this kind. This approach, also, might well penalize the unwary and be contrary to the policy behind the 1951 legislation.

There may be some element of illogic in the result we reach but the tax law is not always completely logical as measured by standards of pure legal reasoning. This is primarily because it is a creature of statute and must therefore develop from rigid and inflexible beginning points.

We conclude that the power of appointment possessed by Alice H. Turner under the 1935 supplement was an unexercised general power "created on or before October 21, 1942", within the meaning of § 2041(a) (1) of the 1954 Code; that the appointive property is not includable in her gross estate; and that Rev.Rul. 278 and the first example set forth in § 20.2041–1(e) of the present Regulations (footnote 6, supra) are not properly interpretive of or responsive to § 2041(a) (1) of the Code.

Affirmed.